UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LISA-ATHENA S. ABU HANTASH, in her individual capacity and as mother and natural guardian of JORDAN-ANNETTEE JAZZMIN RICHARDSON, a minor, and JORDAN RICHARDSON, INC., a Virginia Corporation, | Docket No.:  07 Civ. 3363 (GBD) (KNF) |

*Plaintiffs*,                    **(Oral Argument Requested)**

-against-

V MODEL MANAGEMENT NEW YORK, INC.
and VNY MODEL MANAGEMENT, LLC,

*Defendants*.

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE PORTIONS OF DEFENDANTS' ANSWER PURSUANT TO FED. R. CIV. P. 12(f) AND FOR AN AWARD OF SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

---

NISSENBAUM LAW GROUP, LLC
*Attorneys for Plaintiffs*
LISA ATHENA S. ABU HANTASH, JORDAN-ANNETTEE JAZZMIN RICHARDSON and
JORDAN RICHARDSON, INC.
140 Broadway, 46th Fl.
New York, New York 10005
(212) 871-5711

Gary D. Nissenbaum
         Of Counsel

Gavin I. Handwerker, Esq.
Neelam K. Singh, Esq.
         On the Brief

<u>**TABLE OF CONTENTS**</u>

<u>Page</u>

Preliminary Statement........................................................................................................1

Statement of Facts.............................................................................................................3

Procedural History ............................................................................................................3

POINT I

       **THE COURT SHOULD STRIKE PORTIONS OF
       DEFENDANTS' ANSWER PURSUANT TO FED. R. CIV. P. 12(f)** ...........................4

       A.  The Law ................................................................................................4

       B.  The Law Applied to the Facts at Hand......................................................4

POINT II

       **THE COURT SHOULD ALSO STRIKE DEFENDANTS'
       EIGHTH AFFIRMATIVE DEFENSE AS SET FORTH
       IN PARAGRAPH 151 OF THEIR ANSWER**.................................................19

       A.  The Law ..............................................................................................19

       B.  The Law Applied to the Facts at Hand....................................................20

POINT III

       **THE COURT SHOULD SANCTION THE DEFENDANTS
       PURSUANT TO FED. R. CIV. P. 11** ..........................................................22

Conclusion .......................................................................................................................24

## <u>TABLE OF AUTHORITES</u>

<u>Page</u>

<u>Federal Cases</u>

<u>Beatie and Osborn, LLP v. Patriot Scientific Corp.</u>, 431 F.Supp.2d 367 (SDNY 2006) .................4

<u>Browning Holders' Debenture Committee v. DASA Corporation</u>, 560 F.2d 1078
     (2d Cir. 1977) ..........................................................................................................................23

<u>Cary Oil Co., Inc. v. MG Refining & Marketing, Inc.</u>,  257 F.Supp.2d 768
(SDNY 2003) ...............................................................................................................................21

<u>Connell v. City of New York</u>, 230 F.Supp.2d 432 (SDNY 2002) ....................................................20

<u>Canada St. Regis Band of Mohawk Indians v. New York</u>, 278 F.Supp.2d 313
     (NDNY 2003) ..........................................................................................................................19

<u>FDIC v. Pelletreau & Pelletreau</u>, 965 F. Supp. 381 (EDNY 1997) ..................................................20

<u>FSP, Inc. v. Societe Generale</u>, 2005 WL 475986 (SDNY 2005) ......................................................19

<u>Hart v. Dresdner</u>, 2006 WL 2356157 (SDNY 2006) ......................................................................4, 5, 20

<u>Nemeroff v. Abelson</u>, 620 F.2d 339 (2d Cir. 1980) .........................................................................22

<u>Robert v. Buck Consultants, Inc.</u>, 1997 WL 754014 (N.D.Ill. 1997) ................................................9

<u>Solvent Chem. Co. v. E.I. Dupont De Nemours & Co.</u>, 242 F.Supp.2d 196
     (WDNY 2002) ..........................................................................................................................19

<u>State of New York v. Almy Bros., Inc.</u>, 971 F.Supp. 69 (NDNY 1997) ..........................................19

<u>United States v. Portrait of Walley</u>, 2002 WL 553532 (SDNY 2002) ............................................19

<u>U.S. v. Any and All Radio, Station Transmission Equipment</u>, 2004 WL 2848532
     (SDNY 2004) ...........................................................................................................................19

<u>Weinraub v. Glen Rauch Securities, Inc.</u>, 399 F.Supp.2d 454 (SDNY 2005) ..................................5

<u>William Z. Salcer, Panfeld, Edelman v. Enicon Equities Corp.</u>, 744 F.2d 935
     (2d Cir.1984) ...........................................................................................................................19

<u>Page</u>

**<u>Federal Rules of Civil Procedure</u>**

Fed. R. Civ. P. 8(b) ...............................................................................................4, 22

Fed. R. Civ. P. 8(c) ...............................................................................................5, 22

Fed. R. Civ. P. 8(e) ...............................................................................................22

Fed. R. Civ. P. 11(b)(1) ........................................................................................22

Fed. R. Civ. P. 11(b)(3) ........................................................................................23

Fed. R. Civ. P 12(b)(6) .........................................................................................19

Fed. R. Civ. P 12(f) ..............................................................................................4, 19

## PRELIMINARY STATEMENT

Litigation is an interesting animal.  It can be contentious, complicated and, on occasion, even beneficial; but in almost 10 years of practice, the author of this brief has never seen behavior as exhibited in the verified answer of the Defendants.  To say the least, Defendants' answer is abhorrent, mean-spirited, distasteful and violates all common norms of decency.

The basis of this action commenced by the Plaintiffs sounds in contract and seeks declarations from the court as to the enforceability of two modeling/management agreements.  Defendants, however, do not see it that way.  Instead, they levy personal attacks against the Plaintiffs and their attorneys using words such as "stupid" and "ridiculous."  They even go as far as to insult the infant Plaintiff's mother by making reference to her age, weight, looks, employment status, family values, financial condition, financial security, financial acumen and spending habits.  This is not litigation — this is a deliberate, intentional and knowing violation of the Federal Rules of Civil Procedure.

For the reasons set forth below, Plaintiffs respectfully request that the Court strike those portions of paragraphs 22, 34, 35, 36, 65, 66, 67, 73, 75, 77, 79, 89, 98, 99, 109, 110, 111 and 134 of Defendants' verified answer pursuant to Rule 12(f) on the grounds that the information contained therein is immaterial, impertinent and scandalous.  Likewise, Plaintiffs also request that the Court strike Defendants' Eighth Affirmative Defense (paragraph 151) on the grounds that (a) there is no evidence in support of the allegations that would be admissible; (b) the allegations have no bearing on the issues in this case; and, (c) to permit the allegations contained within the affirmative defense to stand would result in severe prejudice to the Plaintiffs.

Finally and in accordance with Rule 11, Plaintiffs also request that this Court sanction both Defendants and their counsel for violating Rule 8(b), (c) and (e) and Rule 11(b)(1), (2) and (3) of the Federal Rules of Civil Procedure  If we are to give any meaning to the words "civil" litigation, then the Court must send a message to attorneys and litigants alike that such behavior as exhibited by Defendants in their verified answer is intolerable and will not be condoned under any circumstance.

## **STATEMENT OF FACTS**

Plaintiffs shall rely on the affirmation of Gavin I. Handwerker, Esq. with exhibits submitted in connection with this motion.

## **PROCEDURAL HISTORY**

The within matter was commenced by the filing of a summons and complaint on April 30, 2007. Ex. A.  Service of the summons and complaint on Defendants V Model Management and VNY Model Management were effectuated on May 9, 2007 and May 2, 2007, respectively. On May 24, 2007, Plaintiffs' counsel received a copy of Defendants' verified answer, affirmative defenses and counterclaim on or about May 24, 2007. Ex. B.  Thus, the within motion is timely pursuant to Rule 12(f).

## POINT I

## THE COURT SHOULD STRIKE PORTIONS OF DEFENDANTS' ANSWER PURSUANT TO FED. R. CIV. P. 12(f)

### A.    The Law

Rule 12(f) permits a Court to strike from any pleading "any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f).  Although the Courts are generally "very reluctant to determine disputed or substantial issues of law on a motion to strike", motions to strike will be granted where "it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation." Hart v. Dresdner, 2006 WL 2356157, *10 (SDNY 2006) (internal citations omitted); see Beatie and Osborn, LLP v. Patriot Scientific Corp., 431 F.Supp.2d 367, 398 (SDNY 2006).

### B.    The Law Applied To The Facts

Here, the Court is presented with causes of action pertaining to the enforceability of two (2) modeling agreements. Ex. A.  Even Defendants' counterclaim against Plaintiffs concerns the central issue of Plaintiffs' complaint — the enforceability of the 2006 Management Agreement and whether Plaintiffs breached that agreement.  Ex. B at ¶¶ 152-154.  Nevertheless, Defendants have put together what can only be described as an incoherent and unorganized answer levying insults every step of the way about the infant Plaintiffs' home life, her mother's looks, the employability of her immediate family and even their family values. See Ex. B at ¶¶ 36, 66, 73, 77, 79, 89, 110 and 111.  Clearly a violation of Rule 8 which states, in pertinent part:

> **"(b) Defenses; Form of Denials.** A party shall state in short and plain terms the party's defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies. If a party is without knowledge or information sufficient to form a belief as to the truth of an averment, the party shall so state and this has the effect of a denial…When a pleader intends in good

4

> faith to deny only a part or a qualification of an averment, the pleader shall
> specify so much of it as is true and material and shall deny only the remainder…
> subject to the obligations set forth in Rule 11."

Fed. R. Civ. P. 8(b) (emphasis supplied).  For ease of reference, Plaintiffs have underlined those portions of each answer[1] which they believe should be stricken by the Court.  Any reading the Court gives to the Defendants' verified answer shows that without a doubt many, if not all, of the verbiage utilized in defense of Plaintiffs' complaint have no bearing on any of the issues involved in the within matter. Hart v. Dresdner, 2006 WL 2356157, *10.  In fact, Plaintiffs believe that all of the challenged allegations were made to embarrass and humiliate the Plaintiffs and their attorneys.  By filing such a document with the Court, they have now made a public spectacle of this case and, more importantly, the Plaintiffs.

Such tactics as exhibited by Defendants bring to mind the case of Weinraub v. Glen Rauch Securities, Inc., 399 F.Supp.2d 454 (SDNY 2005), wherein the Court wrote the following:

> "Weinraub's claims appear to be frivolous, clearly precluded by existing (and
> well-settled) law, and unsupported by any cognizable argument for the
> modification of existing law. Moreover, given the strangeness of many of
> Weinraub's arguments, and the general disorganization of his papers, this case is
> similar to a recent Rule 11 case where I noted that "[s]ome of plaintiffs' claims
> and arguments ... seem so ill-defined and incoherent that they are, in the words of
> the physicist Wolfgang Pauli, 'not even wrong.' "

Weinraub v. Glen Rauch Securities, Inc., 399 F.Supp.2d at 465 citing Adams v. Intralinks, Inc., 2005 WL 427878 (SDNY 2005).

Because many of allegations in Defendants' answer are immaterial, impertinent and/or scandalous, they should be stricken.

---

[1] It should be noted that Plaintiffs' counsel took great pains to type the words of Defendants' answer exactly as they were written.  We have, therefore, chosen not to use "sic" in order to denote typographical and sentence structure mistakes.

### a.  <u>Paragraph 22</u>

- <u>Plaintiffs' Allegation</u>:

  "On many occasions it was not feasible for Plaintiff Abu Hantash to accompany her daughter to modeling assignments.  As such, Plaintiff Abu Hantash relied heavily on Defendants to ensure the well-being and safety of her daughter."  Ex. A at ¶ 22.

- <u>Defendants' Answer</u>:

  "Defendants deny the allegations contained in paragraph '22' of the Complaint <u>and allege that the Plaintiff, Abu Hantash, did not express any desire or willingness to travel with her daughter, the infant Model Jordan Richardson, on her modeling assignments in 2005 and 2006, except for the one modeling assignment and that was when L'Oreal, which had hired the infant Jordan to model in Buenos Aires, Argentina agreed to pay her mother, Abu Hantash, $11,000.00 airlines fare and disagreed to cover hotel cost for Plaintiff, Abu Hantash, while Jordan was performing a modeling assignment in the country of Buenos Aires, Argentina.</u>" Ex. B at ¶ 22.

  Simply put, Defendants' claims are unnecessary.  The allegation is either true or it is not.

The allegation does not require Defendants' "take."

### b.  <u>Paragraph 34</u>

- <u>Plaintiffs' Allegation</u>:

  "Furthermore, the 2005 Management Agreement provided that the term was automatically extended for "additional periods of two (2) years each . . . unless [Defendant V Management] notifie[d] [Jordan], in writing, that it wishe[d] to terminate this Agreement at any time before the expiration of the Term." Ex. A at ¶ 34.

- <u>Defendants' Answer</u>:

  "The Defendants deny the allegations contained in paragraph '34' and allege further that <u>this is a frivolous allegation</u> because the 2005 Model Management Agreement ended as of June 18, 2006 and the automatic extension issue is now moot and irrelevant." Ex. B at ¶ 34.

Again, Defendants' answer contains unnecessary verbiage with the use of the word "frivolous." However, this seems to be a common theme throughout Defendants' answer wherein they qualify their admissions or denials with the adjective "frivolous." By bandying about such a term, Defendants seem to miss the entire point of Rule 8 and Rule 11. If Defendants' claim is true (the allegation or claim is frivolous), the proper procedure would be to file an application pursuant to Rule 12 and allow the court to determine whether the complaint is in fact frivolous. Since, however, Defendants have filed an answer to Plaintiffs' claims it would appear that Defendants' have abandoned their right to challenge the frivolity of the filing. Therefore, all references by Defendants that Plaintiffs' claims and allegations are frivolous should be stricken from Defendants' answer.

Likewise, since Defendants agree throughout their "answer" that the 2005 Model Management Agreement ended as of June 18, 2006, Plaintiffs would request that the Court enter an Order in favor of Plaintiffs as to Counts One and Two of Plaintiffs' complaint. See Ex. B at ¶¶ 34, 66, 77, 93, 94, 95, 96, 97, 98, 99 and 146.

**c.    Paragraph 35: Defendants claim that the entire case is "Frivolous"**

- Plaintiffs' Allegation:

  "Accordingly, the 2005 Management Agreement is a perpetual contract for services and denies Jordan any rights to terminate it." Ex. A at ¶ 35.

- Defendants' Answer:

  "Defendants deny the allegations contained in paragraph '35' of the Complaint and further allege that this is a frivolous allegation ( just as this entire case is frivolous) where the Plaintiffs allege that the now **dead** 2005 Model Management Agreement , an agreement  the Plaintiff, Abu Hantash consented to in order to allow her infant daughter, the infant Model Jordan to work as a professional model for advertisers **is a perpetual contract** where **said 2005 Agreement** which the Plaintiff Abu Hantash signed and executed was with a New York State

Corporation which has been legally dissolved as of August 15. 2005 and where the plaintiff, Abu Hantash as the parent of the infant Model Jordan entered into a subsequent written agreement with the Defendant, 'V' successor 'VNY Model Management, LLC., and said Agreement commenced June 19, 2006 and ends June 18, 2008.' Ex. B at ¶ 35 (emphasis in the original).

Again, Defendants' answer contains unnecessary verbiage with the use of the word

"frivolous." Although, this time, the frivolity extends to the entire complaint.

### d.    Paragraph 36:  Defendants' Allegations of Theft and "Baby's Daddy"

- Plaintiffs' Allegation:

"In or about early 2006, Defendants recommended that Plaintiff Abu Hantash and Jordan form a corporation for Jordan."  Ex. A at ¶ 36.

- Defendants' Answer:

"Defendants admit that the managing member of VNY Vinderman A/K/A Lana Winters did suggest to Plaintiff, as one recommendation among several, that Abu Hantash investigate and (1) hire an accountant/lawyer to determine if setting up a corporation would help the infant Model Jordan tax wise and (2) that Lana Vinderman also at that time expressed her concerns to the Plaintiff, Abu Hantash, concerning the manner in which the Plaintiff, Abu Hantash was spending the infant Jordan's earnings from her modeling work. (3) Mrs. Vinderman expressed to the Plaintiff, Abu Hantash that in her opinion the ways in which the Plaintiff, Abu Hantash was spending the earnings the Plaintiff, the infant Model Jordan was earning from her remodeling work; was in ways VNY managing member Lana Vinderman /a/k/a Lana Winters (4) **perceived were not in the best interest of the infant model, Jordan and in her opinion (5) showed extremely poor financial/fiscal management and financial judgment** on the parts of the Plaintiff, Abu Hantash and (6) as the year 2006 progressed Lana Winters observed in **"horror"** some of Abu Hantash's purchases and actions; (7) some examples of the manner in which the infant Jordan's earnings have been spent by her mother, the Plaintiff, Abu Hantash herein have been to purchase a new SUV, (8) to encourage Jordan to spend more than $600,000.00 to purchase a home in the State of Virginia (where title is vested in infant model, Jordan and her grandmother's name) when the infant Jordan if she continues to work as a model will be based in the New York City, (9) numerous electronics, electronics gadgets to the excess, especially cellular telephones, household furnishings, food, clothes for every one in her immediate family, (10) all travel costs and the support of all of the unemployed people in her family, sister, sister's baby, grandmother (maybe baby's daddy) and including the infant model Jordan's Mother Abu Hantash who

8

has no visible means of support and (11) finally the hiring of the Nissenbaum Law Group, LLC, Gavin I. Handwerker, Esq., of Counsel to commence this frivolous legal action and whose advice so far includes the advising of the infant Model Jordan to breach her valid enforceable Model Management Agreement with VNY Model Management, LLC. (12) That the Plaintiff, Abu Hantash has done all of the above **instead of following Lana Vinderman's (A/K/A) recommendations i.e., upon information and belief of (13) setting up a saving plan and investing the infant Jordan's money in a manner where it will accumulate for the infant Jordan's future, for example higher education etc., or for her own use when she becomes an adult and (14) doing all acts which would be consistent generally with the preserving and preservation growth of the infant model Jordan Richardson's assets as the infant model rapidly approaching emancipation and adulthood hears in 2008. Abu Hantash knows that the infant Model Jordan earnings situations are earned by the infant Model, Jordan Richardson performing modeling services as an independent contractor and are not taxed initially).**" Ex. B at ¶ 36 (emphasis in original).

This particular answer is the epitome of egregious since it in no way comports with the allegation asserted by Plaintiffs — which addresses only the possibility of forming a corporation for the infant Plaintiff. Interestingly, Defendants actually admit that Plaintiffs' allegation is true. Nevertheless, we are treated to a diatribe by Defendants about alleged purchases made by the Plaintiffs, the employment status of Jordan Richardson's family and even a reference to a "baby's daddy." <u>Id.</u>[2] How such information is in any way relevant to the formation of a

---

[2] Apparently, Defendants are not the first litigants to enter the arena of illogical pleading. In a strikingly similar case, the court in <u>Robert v. Buck Consultants, Inc.</u>, 1997 WL 754014, *1 (N.D.Ill. 1997) stated the following:

"Next, at a number of places in the responsive pleading…Buck's counsel indulge the annoying and meaningless practice of denying non-existent allegations after having responded in full to what Robert has alleged. Answer ¶ 15 is perhaps the most blatant example of that:

15. Plaintiff demands that the case be tried by a jury.

ANSWER: Defendant admits that Plaintiff has demanded that this matter be tried by a jury, but otherwise denies the allegations contained within Paragraph 15 of Plaintiff's Complaint.

Just what, pray tell, is Buck denying? All such meaningless assertions must be eliminated from the new pleading that is being ordered here."

corporation is beyond comprehension.  What is clear, though, is that such tactics utilized in a
pleading are, without a doubt, deplorable.

  **e.**  <u>**Paragraph 65**</u>

- <u>Plaintiffs' Allegation</u>:

  "In a letter dated February 16, 2007 which was sent via Federal Express on
February 17, 2007, Plaintiff Abu Hantash informed Defendant VNY that
because it failed to provide her with a copy of the executed 2006 Management
Agreement, she rejected the 2006 Management Agreement.  A true and
accurate copy of the correspondence dated  February 16, 2007 is attached hereto
as Exhibit D.  True and accurate copies of Federal  Express receipt and signature
receipt are annexed hereto as Exhibits E and F." Ex. A at ¶  35.

- <u>Defendants' Answer</u>:

  "Defendants deny the allegations contained in paragraph "65" of the Complaint
<u>and alleges that the allegations in paragraph "65" show and document the lies of
the Plaintiff, Abu Hantash where the attempts to invalidate the legally enforceable
2006-2008 Model Management Agreement she had signed in writing in June
2006,   binding her daughter, the infant Model Jordan Richardson, to the binding
enforceable Model Management Agreement.</u>" Ex. B at ¶ 35.

  **f.**  <u>**Paragraph 66:  Misappropriation By Plaintiff Hantash**</u>

- <u>Plaintiffs' Allegation</u>:

  "Specifically, Plaintiff Abu Hantash wrote the following [in a letter dated
February 16, 2007 to Defendant VNY]: 'I have made several repeated attempts to
get a copy of the signed [2006 Management Agreement] (dated June 2006 and
expires June 2008) . . . Since these attempts have been unsuccessful, the only
valid contract I have with you is the [2005 Management Agreement] dated 22
April 2005 which expires 22 April 2007.  Know then that at the 22 April 2007
contract expiration date, I will not renew Jordan Richardson's contract with your
agency.  Do not schedule any jobs for her beyond this date.'" Ex. B at ¶ 66.

- <u>Defendants' Answer</u>:

  "Defendants admit the allegations contained in paragraph '66' of the Complaint
where it is alleged by Plaintiff that the letter dated February 16, 2007, was sent by
the Plaintiff, Abu Hantash to Defendant "VNY" <u>and was sent by Plaintiff upon
information and belief in an effort by plaintiff's Abu Hantash to have the 2006-</u>

10

2008 declared null and void and announces [sic] the plaintiff's unilateral intention to breach the 2006-2008 contract where both the defendant VNY Model Management, LLC ( **The February 16, 2007 upon information and belief was sent to the defendant 'VNY' because plaintiff, Abu Hantash was angry with the defendant, VNY's managing member, Lana Vinderman A/K/A because of the financial recommendations and Lana's advice to plaintiff, Abu Hantash was misspending and misappropriating the infant model Jordan's earnings from her modeling work**) and the plaintiff, the infant Model Jordan had an executed bilateral contract and where both the plaintiffs and defendant had given their mutual assent and manifestation of Assent, where consideration was of record and where the contract had been substantially performed by both Plaintiff and Defendant, 'VNY' and where Plaintiff, infant Model Jordan had earned more than $400,000.00 all of which has been paid by '**VNY**' and accepted by the infant, Model Jordan Richardson as compensation.  The February 16, 2007 letter documents where the 2005 Model Management Agreement **was dead and that the 2005 Model Management Agreement with 'V' Model Corp., was a prior written Model Management Agreement signed and executed by plaintiff, Abu Hantash to bind her infant daughter to a model management agreement with a New York State Corporation known as 'V' Model s Corp., a New York Corporation that has been dissolved as of August 15, 2005.  That this letter was sent in an attempt to manipulate the actual facts of what had occurred previously between the parties, plaintiffs and defendants and was sent by Plaintiff, Abu Hantash who had no actual knowledge of her inability to revive the dead 2005 Model Management Agreement she had executed with 'V' Models Corp.**" Ex. B at ¶ 66 (emphasis in original).

Again, Defendants <u>admit</u> that Plaintiffs' allegation is true.  Why an explanation about the financial acumen of Plaintiff Hantash is even relevant to a quote taken from a letter is beyond comprehension, especially when the information supplied in the answer is "upon information and belief." <u>See</u> <u>Id.</u>  There is no factual basis for the claims asserted in this paragraph.  They are simply the opinion of the Defendants.  They provide nothing in terms of probative value.  Simply put, the allegations contained in this particular answer are designed to embarrass and humiliate the Plaintiffs in a public filing.

11

**g.**    **Paragraph 67: Plaintiffs Allegation is "Ridiculous" and "Frivolous"**

- Plaintiffs' Allegation:

"More than a week after Plaintiff Abu Hantash rejected the 2006 Management Agreement and via correspondence dated February 27, 2007, Natalie Nastaskin, Esq. ("Nastaskin"), attorney for Defendant VNY, provided Jordan with the executed Second Signature Page of the 2006 Management Agreement" Ex. A at ¶ 67.

- Defendants' Answer:

"Defendants deny the <u>ridiculous and frivolous</u> allegation contained in paragraph '67' of the Complaint except admit that the Plaintiff, Abu Hantash, as mother of the infant Model Jordan signed version of the '2006-2008 Model Management Agreement was again forwarded to Plaintiff, Abu Hantash." Ex. B at ¶ 67.

Apparently, Defendants believe it is appropriate to classify allegations not only as frivolous, <u>see</u> Ex. B at ¶¶ 34 and 35, but "ridiculous" as well. <u>Cf.</u> Fed. R. Civ. P. 8.

**h.**    **Paragraph 73: Plaintiff Hantash's Ability to be a Model**

- Plaintiffs' Allegation:

"By signing the 2006 Management Agreement in this capacity, Plaintiff Abu Hantash did not agree nor was obligated to perform and/or assume any obligations under the 2006 Management Agreement." Ex. A at ¶ 73.

- Defendants' Answer:

"Defendants admit the <u>frivolous</u> allegations in paragraph '73' of the Complaint, <u>since the infant model's mother, Abu Hantash is not a</u> **model and the only reason she signed the 2006-2008 VNY Model Management Agreement for her daughter, the infant Model, Jordan Richardson, was/is because it is required by New York State Laws. In New York State under the prevailing rules of law and case law modeling agreements/contracts in order to bind an infant model must be signed in writing by the infant's parent or guardian.**" Ex. B at ¶ 73 (internal citation omitted) (emphasis in original).

12

Once again Defendants, for whatever reason, admit an allegation which they consider to be "frivolous." Id.  If an allegation is admitted in toto, it requires no comment on the part of the pleader.

Nevertheless, the irrelevance of Defendants' accusations should be readily apparent.  The complaint makes no allegation about Ms. Hantash and her modeling abilities.  Jordan Richardson was the model in this case, has always been the model in this case and the complaint deals with her services specifically.  On the other hand, Ms. Hantash's involvement is this case is tangential but nevertheless relevant since she signed both agreements (unlike her daughter) in her capacity only as mother and legal guardian for Jordan, indicating her assent to her daughter entering into either.  Plaintiffs have every right to seek a declaration from the Court regarding her personal obligations and whether she bound her daughter to a particular agreement.   Why Defendants would even need to comment on Ms. Hantash's abilities as a model are troubling, to say the least.  Obviously, the comments and innuendos were made with purpose of embarrassing and humiliating Ms. Hantash.

### i.    Paragraph 75

- Plaintiffs' Allegation:

  "Furthermore, the correspondence provided the following: '[f]or purposes of clarity, [VNY Model Management, LLC] has the right to terminate the Agreement at any time during the Term with written notice to Model.  However, Model may not terminate this Agreement except within thirty (30) days prior to the expiration of then-current period of the Agreement (please see handwritten clause on signature page)." Ex. A at ¶ 75 (internal citation omitted).

- Defendants' Answer:

  "Defendants deny the frivolous allegations in paragraph '75' of the Complaint, because the Model Agreement was modified by the Plaintiff, Abu Hantash in her own handwriting to change this paragraph in the 2006-2008 Model Management

13

Agreement and is one of the terms of the valid, enforceable 2006-2008 Model Management Agreement between the parties hereto." Ex. B at ¶ 75.

Again, whether an allegation is frivolous is for a court to determine.  It is not, as Defendants would have it, necessary for purposes of answering a complaint.

**j.    Paragraph 77:  Plaintiffs' Allegations are Now "Stupid" and "Ridiculous" (But Not Frivolous)**

- Plaintiffs' Allegation:

    "Via correspondence dated March 21, 2007, Jordan, by and through her attorneys, informed Defendant VNY, by and through its attorney, Ms. Nastaskin, that any and all agreements with Defendants were terminated and Jordan's last day with Defendant VNY would be April 22, 2007."  Ex. A at ¶ 77.

- Defendants' Allegation:

    "Defendants deny the allegations contained in paragraph '77' deny the allegations contained in paragraph '77' of the Complaint and allege that said letter of March 21, 2007 documents plaintiff's intentional and unilateral breach of the 2006-2008 Model Management Agreement that the Plaintiff, has with VNY Model Management, LLC.  Defendants further deny the stupid, ridiculous allegations contained in paragraph '77' of the Complaint and assert this is another example of where the plaintiffs have attempted to revive the terms of a dead contract, an agreement plaintiff had with V Models, Corp., a dissolved New York State Corporation, after Plaintiff, the infant Model Jordan Richardson and the Defendant, VNY Model Management had substantially performed the terms of the 2006-2008 bilateral contract for a period of more than one year pursuant to the terms of the 2006-2008 Agreement that the infant model, Jordan's mother, Abu Hantash has given her consent to with VNY in June, 2006." Ex. B at ¶ 77.

Plaintiffs would not object to the Court requiring Defendants to appear before it and explain how any answer to a complaint can involve the use of the words "stupid" and "ridiculous."  Clearly, the "answer" to this allegation violates Rule 8 and Rule 11.

k.    **Paragraph 79**

- Plaintiffs' Allegation:

"Jordan wishes to continue her modeling career and eventually sign with another modeling agency and/or management company without fear that she will be held to the obligations under the 2005 Management Agreement and 2006 Management Agreement."  Ex. A at ¶ 79.

- Defendants' Answer:

"Defendants lack sufficient information or belief sufficient to form a belief as to the truth of the allegations contained in paragraph '79' <u>and because decisions are being made by individuals who have not had Jordan's best interest as their priority defendant, VNY admits that it will continue to hold the infant model Jordan to the terms of the 2006-2008 Model Management Agreement her mother, Abu Hantash gave her written consent and will seek monetary damages for each and every breach of said Model Management Agreement and VNY will remain the infant model, Jordan Richardson, exclusive Model Management Agency until the current 2006-2008 Model Management Agreement expires on June 18, 2008.</u>" Ex. B at ¶ 79.

This is another perplexing answer, to say the least.  Defendants, on the one hand, cannot admit or deny the allegation because they lack information.  On the other hand, they are readily capable of rendering an opinion about the infant Plaintiff's home life by declaring that individuals do not have Ms. Richardson's best interests at hand. <u>Id.</u>  What that accusation has to do with Ms. Richardson's desire to continue her modeling career is anyone's guess.

l.    **Paragraph 89**

- Plaintiffs' Allegation:

"As such, Plaintiff Abu Hantash is not bound by the 2005 Management Agreement and its obligations thereunder." Ex. A at ¶ 89.

- Defendants' Answer:

"Defendants deny the <u>frivolous</u> allegations contained in paragraph '89' of the Complaint, <u>the plaintiff, Abu Hantash is not a model and clearly gave her written consent to the now dead 2005 Model Management Agreement binding her infant</u>

15

model daughter, Jordan Richardson to the 2005 Management Agreement." Ex. B
at ¶ 89.

Again, fodder in a pleading designed only to embarrass and humiliate the Plaintiffs.  See
ante at pp. 12-13 (regarding Plaintiff Hantash's modeling capabilities).

    **m.**    **Paragraph 98**

- Plaintiffs' Allegation:

  "The terms of the 2005 Management Agreement are so one-sided so as to have
  Plaintiffs bound by the agreement would be unconscionable." Ex. A at ¶ 98.

- Defendants' Answer:

  "Defendants deny the allegations contained in paragraph '98' of the Complaint
  and further assert that this issue is now moot/irrelevant and represents a frivolous
  allegation in this complaint because the 2005 Model Management Agreement,
  plaintiff, Abu Hantash signed with V. Models Corp., ended June 18, 2006."  Ex.
  B at ¶ 98.

    **n.**    **Paragraph 99**

- Plaintiffs' Allegation:

  "Therefore, in the event that the Court does not declare that Jordan Richardson
  has the unfettered right to disaffirm the 2005 Management Agreement between
  Defendant V Management and Jordan Richardson on the basis that it is
  unconscionable and declare that neither Plaintiff Jordan Richardson nor Plaintiff
  Abu Hantash are obligated to perform thereunder." Ex. A at ¶ 99.

- Defendants' Answer:

  "Defendants deny the allegations contained in paragraph '99' of the Complaint
  and assert further that this issue is now moot/irrelevant, frivolous and without any
  merit because the 2005 Model Management Agreement plaintiff, Abu Hantash
  ended as of June 18, 2006." Ex. B at ¶ 99.

**o.**    **Paragraph 110:  Plaintiff Hantash's Looks (Again)**

- Plaintiffs' Allegation:

"In addition, there was no consideration exchanged between Plaintiff Abu Hantash and Defendant VNY Management to deem the 2006 Management Agreement enforceable with regard to Plaintiff Abu Hantash." Ex. A at ¶ 110.

- Defendants' Answer:

"Defendants deny the allegations contained in paragraph '110' of the Complaint and assert that plaintiff, **Abu Hantash is not a model, does not look like a model** and that plaintiff Abu Hantash signed the 2006-2008 Model Management Agreement as the parent/natural guardian of her infant model daughter, Jordan Richardson, who accordingly rendered services as a model during 2006 and was managed by VNY Model Management LLC, during 2006 for several months and the infant model received consideration and earning in excess of $400,000.00 and where both the plaintiff, Jordan Richardson and the defendant VNY have substantially performed the contract until the plaintiff's announced their unilateral breach of the Contract as of April 22, 2007." Ex. B at ¶ 110 (emphasis in original).

Again, fodder in a pleading designed only to embarrass and humiliate the Plaintiffs.  See ante at pp. 12-13, 16 (regarding Plaintiff Hantash's modeling capabilities).

**p.**    **Paragraph 111: Plaintiff Hantash's age and weight would not result in a modeling contract anywhere "on the globe":**

- Plaintiffs' Allegation:

"In addition, Plaintiff Abu Hantash did not accept the terms of the 2006 Management Agreement or agreed to be bound by the terms of the 2006 Management Agreement."  Ex. A at ¶ 111.

- Defendants' Allegation:

"Defendants deny the allegations contained in paragraph '111' of the Complaint and it is frivolous in its entirety, the plaintiff, Abu Hantash is not a model, upon information and belief is not suitable to be a model, as she is well aware of and probably would not be contracted to render modeling services under any circumstances by any Modeling Agency on the globe because of her age and weight and the only reason the plaintiff, Abu Hantash signed the 2006-2008 was so that the VNY Model Management Agreement would be binding on her infant

17

model daughter, Jordan Richardson, who has worked as a model since 2005 and earned more than $400,000.00 during 2006 and so that upon information and belief plaintiff, Abu Hantash could continue to spend/exploit the infant model Jordan's earnings for her own private benefit; especially before VNY Model Management, LLC, managing member, Lana Winters 'pulled the plug' and notified the New York Supreme Court of how the infant Jordan's income was being misused misappropriated and not being preserved by her Mother, the plaintiff, Abu Hantash herein." Ex. B at ¶ 111.

Plaintiffs would not object to the Court requiring Defendants to appear before it and explain how their answer, or any answer for that matter, can involve a discussion about a party's looks, age and weight when discussing the enforceability of two (2) contracts. That Defendants would even go to great lengths to opine that no modeling agency "on the globe" would contract with Ms. Hantash to be a model is beyond words or comprehension (more salt on an open wound). Clearly, the "answer" to this allegation violates Rule 8 and Rule 11 as it is designed solely to embarrass and humiliate Ms. Hantash.

### q.    Paragraph 134

- Plaintiffs' Allegation:

  "For the reasons set forth above, there is a likelihood of success on the merits that the Court will determine that the 2005 Management Agreement and/or 2006 Management Agreement is unenforceable and/or null and void and/or rescinded." Ex. A at ¶ 134.

- Defendants' Answer:

  "Defendants deny that the plaintiffs have a like hood of success on the merits of this case and that the allegations of plaintiffs that 2006 Management agreement is ' unenforceable and/or null and void and/or rescinded has no merit and are frivolous allegations as alleged by plaintiffs in paragraph '134' of the Complaint." Ex. B at ¶ 134.

**POINT II**

**THE COURT SHOULD ALSO STRIKE DEFENDANTS' EIGHTH AFFIRMATIVE DEFENSE AS SET FORTH IN PARAGRAPH 151 OF THEIR ANSWER**

**A.      The Law**

An affirmative defense is defined as "[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's… claim, even if all allegations in the complaint are true." U.S. v. Any and All Radio, Station Transmission Equipment, 2004 WL 2848532, *10 (SDNY 2004) quoting Saks v. Franklin Covey Co., 316 F.3d 337, 350 (2d Cir.2003) citing Black's Law Dictionary 430 (7th ed.1999).

A motion to strike an affirmative defense pursuant to Rule 12(f) is governed by the same standard applicable to a motion to dismiss pursuant to Rule 12(b)(6). FSP, Inc. v. Societe Generale, 2005 WL 475986, *8 (SDNY 2005); Canada St. Regis Band of Mohawk Indians v. New York, 278 F.Supp.2d 313, 332 (NDNY 2003); Solvent Chem. Co. v. E.I. Dupont De Nemours & Co., 242 F.Supp.2d 196, 212 (WDNY 2002); United States v. Portrait of Walley, 2002 WL 553532, *4 n. 3 (SDNY 2002).   As such, an affirmative defense should not be struck "unless it appears to a certainty that plaintiffs would succeed despite any state of facts which could be proved in support of the defense." William Z. Salcer, Panfeld, Edelman v. Enicon Equities Corp., 744 F.2d 935, 939 (2d Cir.1984), cert. granted and judgment vacated on other grounds, 478 U.S. 1015 (1986).  An affirmative defense cannot be struck if it presents disputed and substantial questions of law, the resolution of which might support the defendant's contention. State of New York v. Almy Bros., Inc., 971 F.Supp. 69, 72 (NDNY 1997) citing William Z. Salcer, 744 F.2d at 939.

In determining whether to strike an affirmative defense, this jurisdiction has established a 3-part test.  Thus, in order to prevail on such a motion the movant must show that: (a) there is no evidence in support of the party's allegations which would be admissible; (b) the allegations do not have any bearing on the issues involved in the case; and (c) the movant would be prejudiced if the allegations were permitted to stand.  Hart v. Dresdner, 2006 WL 2356157, *10 citing Roe v. City of New York, 151 F.Supp.2d 495, 510 (S.D.N.Y. 2001); Connell v. City of New York, 230 F.Supp.2d 432, 438 (SDNY 2002); FDIC v. Pelletreau & Pelletreau, 965 F. Supp. 381, 389 (EDNY 1997).

### B.    The Law Applied To The Facts

Clearly, Defendants Eighth Affirmative Defense must be stricken.  First, the affirmative defense is alleged "upon information and belief."  See Ex. B at ¶ 151.  Thus, the hypothetical nature of the pleading already makes the defense suspect.  Defendants' opinion regarding the commencement of this legal action would not be admissible under any circumstances.  Therefore, Plaintiffs have satisfied the first prong of the 3-part test.

Second, the Plaintiffs' complaint seeks, among other things, a determination and declaration by this court that two (2) modeling/management contracts are unenforceable.  See generally Ex. A.  Similarly, Defendants' only counterclaim seeks to hold Plaintiffs liable for breach of at least one of those contracts.  See Ex. B at ¶¶ 152-154.  As such, the Court will ultimately need to analyze such things as whether there was a valid offer and acceptance by both parties and whether the parties exchanged valid consideration for one or both or both contracts.

Defendants, however, believe that Plaintiffs' motivation for commencing this lawsuit and Defendants motivation for defending against are somehow relevant to the analysis as well.  See

Ex. B at ¶ 151.  To the contrary, those facts have no bearing on the issues involved in this case. The motivation for filing a lawsuit is not in any way relevant to the issue of whether or not a contract is enforceable and whether or not Plaintiffs breached their alleged agreement with Defendants.  See Cary Oil Co., Inc. v. MG Refining & Marketing, Inc., 257 F.Supp.2d 768, 773 (SDNY 2003) citing Fed.R.Evid. 403 ("such evidence would be distracting to the jury, focusing them on the irrelevant issue of why the Plaintiffs may have filed the lawsuit.  The Court is not persuaded that such an issue has a direct bearing on the illegality of the Contracts [sic] or whether or not Plaintiffs signed a release that barred their claims.  Indeed, the Court believes the "probative value [of such evidence] is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury ....").  Because the allegation regarding Plaintiffs' motivation for filing suit do not have any bearing on the issues involved in the case, Plaintiffs' have satisfied the second prong to dismiss Defendants' Eighth Affirmative Defense.

Likewise, the third prong (prejudice) is easily satisfied as well.  Again, the "defense" is based upon pure speculation.  See Ex. B at ¶ 151 ("…Defendants allege upon information and belief…").  Defendants have no direct knowledge of Plaintiffs' financial condition.  Nor could they even possibly know how monies are even spent by them.  Similarly, Defendants allege without any knowledge that Plaintiff has Hantash "has always been unemployed with no visible means of financial support."  This is not a defense.  Rather, it is court sanctioned slander.  The allegations contained within Defendants' Eighth Affirmative Defense are, by operation, designed to humiliate and embarrass the Plaintiffs.  It cannot be allowed to stand and must be dismissed.

## POINT III

## THE COURT SHOULD SANCTION THE DEFENDANTS PURSUANT TO FED. R. CIV. P. 11

There remains for final consideration Plaintiffs' request that sanctions be imposed upon defendants and their counsel under Rule 11.  Clearly this is a case where the Rule was intended to apply.  Here, Defendants violated every tenet of pleading. See Fed. R. Civ. P. 8(b), (c) and (e).

At the very least, each and every admission and denial in Defendants' answer contains a multitude of illogical and poorly written statements.  Sentence structure and punctuation are completely thrown out the window and Plaintiffs (and now this Court) are forced to try and make sense of it.

At the very worst, Defendants' answer epitomizes the bench and bar's worst fears when it comes to litigation — that attorneys are seen as conduits for vexatious and cantankerous litigation between parties.  One need only look at the numerous insults lobbied against the Plaintiffs regarding their age, weight, looks, employment status, family values, financial condition, financial security, financial acumen and spending habits to see that Defendants are more concerned about how the Plaintiffs are perceived in the public eye rather than whether the case has merit. See Ex. B at ¶¶ 22, 34, 35, 36, 65, 66, 67, 73, 75, 77, 79, 89, 98, 99, 109, 110, 111, 134 and 151.

In sum, the answers, defenses and counterclaim filed by Defendants and their counsel are "without color" and made for reasons of harassment, delay, highly improper purpose and to increase needlessly the cost of this litigation. See Fed. R. Civ. P. 11(b)(1); Nemeroff v. Abelson, 620 F.2d 339, 348 (2d Cir. 1980); Browning Holders' Debenture Committee v. DASA

22

<u>Corporation</u>, 560 F.2d 1078, 1088 (2d Cir. 1977).  Likewise, the claims, defenses, and other legal contentions asserted by Defendants have no evidentiary support, have no bearing on the issues in the case and have severely prejudiced, embarrassed and humiliated the Plaintiffs. <u>See</u> <u>ante</u> at Point II; Fed. R. Civ. P. 11(b)(3).

As such, it is respectfully requested that the Court sanction the Defendants and their counsel for violations of Rules 8 and 11 of the Federal Rules of Civil Procedure.

## <u>CONCLUSION</u>

For the foregoing reasons, it is respectfully requested that the Court grant the relief requested herein in its entirety and grant such other, further and different relief as to the Court seems just, equitable and proper under the circumstances.

Dated:  New York, New York
        May 31, 2007

NISSENBAUM LAW GROUP, LLC


/S/ GAVIN I. HANDWERKER
By:  Gavin I. Handwerker (GIH6191)
*Attorneys for Plaintiffs*
140 Broadway, 46th Fl.
New York, New York 10005
(212) 871-5711

24