UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LISA-ATHENA S. ABU HANTASH, in her individual capacity and as mother and natural guardian of JORDAN-ANNETTEE JAZZMIN RICHARDSON, a minor, and JORDAN RICHARDSON, INC., a Virginia Corporation,

                              *Plaintiffs*,

-against-

V MODEL MANAGEMENT NEW YORK, INC. and VNY MODEL MANAGEMENT, LLC,

                              *Defendants*.

Docket No.: 07 Civ. 3363 (GBD) (KNF)

**AFFIDAVIT OF LISA-ATHENA S. ABU HANTASH IN SUPPORT OF PLAINTIFFS' MOTION FOR A DEFAULT JUDGMENT, SUMMARY JUDGMENT AND OTHER RELIEF**

STATE OF _____ )
                                   ) ss.
COUNTY OF _____ )

      LISA-ATHENA S. ABU HANTASH, having been duly sworn, deposes and says under penalty of perjury:

      1.      I am the named Plaintiff and mother and natural guardian for Jordan-Annettee Jazzmin Richardson in the above-entitled action. As such, I am fully familiar with the facts and circumstances of the within action.

      2.      I submit this affidavit in support of my attorneys' application for, among other things, (a) declaratory relief; and, (b) summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure; or, (c) in the alternative, an Order directing a speedy hearing and advancing the within on the trial calendar pursuant to Rule 57.

      3.      I incorporate by reference the allegations contained in the complaint verified by your affirmant and filed with this Court on April 30, 2007.

**The 2005 Management Agreement And 2006 Management Agreement**

4.	On or about April 22, 2005, my daughter, Jordan Richardson, entered into a model management contract ("2005 Management Agreement") with Defendant V Model Management New York, Inc. ("V Management"). Ex. A.

5.	I indicated my consent to my daughter entering into the contract by signing the 2005 Management Agreement in my capacity as mother and legal guardian of Jordan. Id. at 6.

6.	By executing the 2005 Management Agreement, I was not agreeing to perform and/or assume any obligations. In fact, the 2005 Management Agreement did not require me to perform any act or even ensure that my daughter performs in accordance with the terms of the agreement. Ex. A.

7.	In or about June 2006, Defendant V Management and/or Defendant VNY Model Management, LLC ("VNY") represented to me that a new agreement would have to be executed because Defendant V Management changed its name to "VNY Model Management, LLC."

8.	Defendant V Management further represented to me that it could not pay and would not pay my daughter for the work she performed pursuant to the 2005 Management Agreement unless and until a new agreement was executed with Defendant VNY. I thought this was extremely odd because I could not understand why a company which changed its name would be unable to pay my daughter for services she had already rendered. However, as I have three (3) children to support, I felt obligated to enter into a new agreement so that my daughter could get paid for her past and future modeling services.

9.	Subsequently, I discovered that Defendants V Management and/or VNY continued to pay other models pursuant to their management agreements with Defendant V Management — even though they did not execute new agreements with Defendant VNY.

10. Notwithstanding and based on Defendant V Management and/or Defendant VNY's representations to me and my daughter, I requested that Defendant VNY forward to me a new agreement to review.

11. On or about June 19, 2006, I received an agreement dated June 19, 2006 between Defendant VNY and Plaintiff Jordan Richardson, Inc. ("2006 Management Agreement"). At the time that I received the 2006 Management Agreement, Defendant VNY had not yet executed the 2006 Management Agreement.

12. I reviewed the 2006 Agreement and made hand-written changes directly on the document. One of the provisions that I noticed was missing from the agreement was Jordan Richardson, Inc.'s right to terminate the 2006 Management Agreement. Ex. B.

13. This clause was also missing in my daughter's 2005 Management Agreement and we found it to be patently unfair. Obviously, if my daughter (or my daughter's company) was required to execute a new contract (which turned out to be unnecessary), we did not want to be bound to any agreement in perpetuity if we were unhappy.

14. Therefore, I inserted the following provision onto the signature page of the proposed contract:

> "Jordan Richardson, Inc. has the right to terminate the agreement with VNY Model Mgt, LLC with 30 days prior notification of the conclusion of said Agreement" ("Termination Provision").

See Ex. B at 6.

15. After inserting the provision into the agreement and signing the 2006 Management Agreement in my capacity as Jordan's mother and legal guardian, I faxed the 2006 Management Agreement to Defendant VNY for its signature on or about July 6, 2006.

16. Rather than signing the 2006 Management Agreement, Defendants objected to the language of the Termination Provision.

17. On or about July 17, 2006, I modified the language of the Termination Provision to read as follows:

> "Jordan Richardson or representative has the right to cancel the contract with a written notice 30 days prior to the expiration of the contract" ("Modified Termination Provision").

See Ex. C.

18. Again, I signed the 2006 Management Agreement in my capacity as Jordan's mother and legal guardian.

19. At this point, my daughter and/or Jordan Richardson, Inc. had not signed the 2006 Management Agreement. To this day, Jordan Richardson and/or an authorized representative of Jordan Richardson, Inc. have not signed the 2006 Management Agreement.

20. Subsequently, I sent the 2006 Management Agreement containing the Modified Termination Provision to Defendants VNY for its acceptance and execution.

21. However, Defendant VNY did not provide me with an executed copy of the 2006 Management Agreement or respond to my revisions. It was my belief that unless and until a fully executed agreement was signed and exchanged, the parties (in this instance my daughter and Defendant V Model Management) were working under the terms of the 2005 Management Agreement.

22. In or about October 2006, I realized that Defendant VNY did not provide me with a copy of the executed 2006 Management Agreement — nor did Defendant VNY communicate that it had accepted the terms of the 2006 Management Agreement, as modified.

23. Thereafter, from October 2006 to February 16, 2007, I and my mother, Rachelle Saunders (Jordan's grandmother), contacted Defendant VNY several times requesting it provide me with an executed copy of the 2006 Management Agreement.

24. On or about February 12, 2007, Defendant VNY informed me that I would receive a copy of the executed 2006 Management Agreement no later than February 16, 2007.

25. However, I did not receive an executed copy of the 2006 Management Agreement by February 16, 2007.

26. In a letter dated February 16, 2007, I informed Defendant VNY that because it had failed to provide me with a copy of the 2006 Management Agreement, the 2006 Management Agreement was rejected. Ex. D.

27. Specifically, I stated the following:

> "I have made several repeated attempts to get a copy of the signed [2006 Management Agreement] (dated June 2006 and expires June 2008) . . . Since these attempts have been unsuccessful, the only valid contract I have with you is the [2005 Management Agreement] dated 22 April 2005 which expires 22 April 2007.
>
> Know then that at the 22 April 2007 contract expiration date, I will not renew Jordan Richardson's contract with your agency. Do not schedule any jobs for her beyond this date."

Ex. D.

28. It is important to note that the correspondence dated February 16, 2007 was sent via Federal Express on February 17, 2007. A true and accurate copy of the Federal Express receipt is annexed hereto as Exhibit E.

29. According to the Federal Express web site, the letter rejecting the 2006 Management Agreement was accepted by Defendants' attorney, Natalia Nastaskin, Esq., on February 20, 2007 at 2:11 p.m. A true and accurate copy of the Federal Express proof of delivery with signature is annexed hereto as Exhibit F.

30. More than a week after I sent this correspondence out rejecting the 2006 Management Agreement and via correspondence dated February 27, 2007, Ms. Nastaskin mailed an executed copy of the signature page of the 2006 Management Agreement containing the Modified Termination Provision. Ex. G.

31. In that same correspondence, Ms. Nastaskin informed Jordan that the 2006 Management Agreement was in "full force and effect and may not be terminated, except in accordance with the terms thereof." Id,

32. In addition and via correspondence dated March 2, 2007, Ms. Nastaskin reiterated Defendant VNY's position that the 2006 Management Agreement is in full force and effect. Ex. H.

33. To this day, I cannot understand how she could make such a ludicrous claim because 10 days earlier we had rejected the 2006 Management Agreement. Our rejection was sent on February 17, 2007 and received by the Defendants on February 20, 2007. See Ex. D and F. Defendants did not respond with an "acceptance" until February 27, 2007. Ex. G.

34. Defendants' assertion that the 2005 Management Agreement and/or 2006 Management Agreement are enforceable with respect to myself, my daughter and/or my daughter's company is making it extremely difficult to find another management company who is willing to represent Jordan in her professional career.

35.     Without the Court's assistance, I believe my daughter's career will be jeopardized. My daughter has a lot of potential, but she must be free from the grip of the Defendants in order to go on with her career. Money cannot adequately compensate us at this juncture.

36.     It is therefore respectfully requested the Court grant our application to permanently enjoin the Defendants from asserting to any one that my daughter is represented by V Model Management and/or VNY Model Management.

**<u>Improper Deductions and Expenses</u>**

37.     Generally when Jordan performed a modeling assignment, Defendant VNY would deduct its management fee and other expenses advanced to Jordan.

38.     However, many of the invoices setting forth the deducted advancements and expenses did not accurately reflect the amount for those advancements and expenses.

39.     According to my accountant, Jordan received a total of $416,000.00 in payments from Defendants. However, Jordan was given a Form 1099 for $405,713.79. I would like to know how there can be a $10,286.21 discrepancy. The last thing my daughter needs is a notice from the Internal Revenue Service requesting an audit.

40.     In addition, my accountant informs me that Defendants deducted "expenses" in excess of $400,000.00. If I were to add that number to what my daughter received (according to her 1099), the net total would be $805,713.79. That means the Defendants' "cut" was equal to 49.6% of the net total paid to Jordan. Something is definitely wrong.

41.     As such, I have a good-faith basis to believe that Defendants have made improper deductions for expenses and advancements.

42. It is therefore respectfully requested that the Court grant the relief requested by my attorneys and direct Defendants to account to me and my daughter for all monies received and all monies paid in connection with Jordan's services. I also request that Defendants be ordered to supply all documentation supporting their deductions for fees and expenses.

WHEREFORE it is respectfully requested that the Court grant the within application together with such other, further and different relief as to the Court seems just, equitable and proper under the circumstances.

*Lisa-Athena S. Abu Hantash*
LISA-ATHENA S. ABU HANTASH

STATE OF *Virginia* )
City OF *Newport News* : ss.:

On the 24th day of *May*, 2007, before me, the undersigned, personally appeared LISA-ATHENA S. ABU HANTASH, the subscribing witness to the foregoing instrument, with whom I am personally acquainted, who, being by me duly sworn, did depose and say that she resides in Hampton, Virginia; that he knows LISA-ATHENA S. ABU HANTASH to be the individual described in and who executed the foregoing instrument; that said subscribing witness was present and saw said LISA-ATHENA S. ABU HANTASH execute the same; and that said witness at the same time subscribed her name as a witness thereto.

_____
NOTARY PUBLIC
My commission expires
8/31/08

-8-