Not Reported in F.Supp.2d, 2004 WL 691520 (S.D.N.Y.)

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Robert F. LADAU Plaintiff,
v.
THE HILLIER GROUP, INC. Defendant.
No. 02 Civ.4703(LAP).
March 31, 2004.

Memorandum & Order

PRESKA, J.

*1 On June 18, 2002, Plaintiff Robert F. Ladau ("Plaintiff" or "Mr. Ladau") brought this action against Defendant The Hillier Group, Inc. ("Defendant" or "Hillier") for breach of contract and for violation of New York Labor Law, Article 6, by non-payment of wages. On July 17, 2002, Hillier answered the complaint and asserted various affirmative defenses. At a July 16, 2003 status conference before the Court, the parties agreed to present partial summary judgment motions to the Court limited to the issue of whether the agreement between Mr. Ladau and Hillier with respect to Plaintiff's incentive compensation included an agreement to pay such compensation on amounts received by Hillier after the termination of Plaintiff's employment. By notice of motion dated August 16, 2003, Plaintiff moved for partial summary judgment on this issue. By notice of motion dated September 12, 2003, Hillier cross-moved for partial summary judgment "with respect to the claims included in the Complaint of Plaintiff." FN1

> FN1. As clarified in Defendant The Hillier Group, Inc.'s Sur-Reply Memorandum of Law in Further Support of its Cross-Motion for Partial Summary Judgment ("Def's Sur-reply"), dated September 26, 2003, Hillier's Cross-Motion is for summary judgment on all claims in the Complaint except to the extent that Plaintiff may claim that there are any projects for which he has any vested, unpaid incentive compensation that accrued prior to his termination date of November 1, 2001. (Def's Sur-reply, at 2 n. 2.)

*Facts*

The following facts are taken from the parties' submissions pursuant to Local Rule 56.1 and are undisputed unless otherwise noted. FN2

> FN2. Four submissions were submitted by the parties with respect to Rule 56.1: Plaintiff's Statement Pursuant to Local Rule 56.1 ("Pl's 56.1 Statement"), dated August 16, 2003; Defendant The Hillier Group, Inc.'s Counter-Rule 56.1 Statement ("Def's Counter-Statement"), dated September 12, 2003; Defendant The Hillier Group, Inc.'s Rule 56.1 Statement ("Def's 56.1 Statement"), dated September 12, 2003; and Plaintiff's Counter-Statement Pursuant to Local Rule 56.1 ("Pl's Counter-Statement"), dated September 19, 2003.

In December of 1995, Gerard ("Guy") F.X. Geier, II, NCARB, AIA ("Mr.Geier"), Managing Principal of the Hillier Group, extended Mr. Ladau a written offer of employment in a letter dated December 5, 1995 (the "December 5 letter"). (Ladau Aff. Ex. A.) That letter states in full:

This letter will serve as confirmation of our discussion today and our offer for you to join Hillier/Eggers in New York.

Your salary will be $80,000., payable semi-monthly. Additionally, incentive compensation will be awarded to you on the following basis:

- 4% of the net fees brought in by you to Hillier/Eggers

- 10% of the net profit earned on the projects brought in by you to Hillier/Eggers

The incentive compensation will be payed [sic] to you on a pro rata basis as the fee is earned and payed [sic] to us by the client. The incentive compensation structure will be reviewed by us at the end of 1996 based on your performance.

As discussed, you have estimated that you will be bringing with you fees of approximately $250,000. from your current client base.

We look forward to your joining us and anticipate building a strong interiors practice in the New York office.

( *Id.*) By letter dated December 11, 1995, Mr. Ladau wrote to Mr. Geier (the "December 11 letter"). The letter states:

This will acknowledge my receipt and acceptance of your letter dated 12/5/95 outlining the terms of my employment with Hillier/Eggers in New York.

Confirming our conversation on 12/4, it is mutually understood and agreed that although my employment officially starts on 2 January 96, incentive compensation on projects for which I have submitted proposals prior to commencement of my employment with Hillier/Eggers will be subject to the terms outlined in your letter. Such projects include Pittston, Westpac Bank, SCI and Time Inc.

**\*2** In addition, entitlement to incentive compensation for projects resulting from my efforts shall survive termination of my employment with Hillier/Eggers.

x x x x x

I greatly appreciate the opportunity to join Hillier/Eggers and look forward to a long and mutually rewarding relationship.

(Ladau Aff. Ex. B.) The letter was faxed by Mr. Ladau to Hillier prior to the commencement of his employment with Hillier. (Def's 56.1 Statement ¶ 4.) Hillier never responded to Mr. Ladau's letter in writing. (Pl.'s 56.1 Statement ¶ 5.) Mr. Ladau commenced employment at Hillier on January 2, 1996 (Pl's 56.1 Statement ¶ 6) and was terminated on November 1, 2001 (Def's 56.1 Statement ¶ 15). Following termination, Plaintiff contacted Hillier and stated that he believed several additional projects should be been included within the final calculations of his accrued incentive compensation. (Def's 56.1 Statement ¶ 17.) Hillier subsequently made some additional payments to Plaintiff. (Pl's Counter-Statement ¶ 19.) Mr. Ladau contends, and Hillier disputes, that Hillier still owes additional payments under the agreement. (Pl's Counter-Statement ¶ 21.)

*Discussion*

I. Summary Judgment Standard

Under Rule 56, summary judgment shall be rendered if the pleadings, depositions, answers, interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. Proc. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party," and facts are material to the outcome of the litigation if application of the relevant substantive law requires their determination. Anderson, 477 U.S. at 248.

The moving party has the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

The substantive law determines the facts which are material to the outcome of a particular litigation. See Anderson, 477 U.S. at 250; Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir.1975). In determining whether summary judgment is appropriate, a court must resolve all ambiguities, and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

If the moving party meets its burden, the burden then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. Proc. 56(e). The non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Only when it is apparent, however, that no rational finder of fact "could find in favor of the non-moving party because the evidence to support its case is so slight" should summary judgment be granted. Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir.1994).

## II. Existence and Formation of the Contract

*3 Under New York law, "the formation of a legally binding agreement requires an offer and an acceptance." Morgan Guaranty Trust Co. v. Chodorow, 91 Civ. 6414, 1993 U.S. Dist. LEXIS 29, at *18 (S.D.N.Y. Jan. 4, 1993). An acceptance "must comply with the terms of the offer and be clear, unambiguous and unequivocal." King v. King, 208 A.D.2d 1143, 1144, 617 N.Y.S.2d 593, 594 (3d Dep't 1994) (citations omitted); see also Gram v. Mutual Life Ins. Co., 300 N.Y. 375, 382-383, 91 N.E.2d 307, 311 (1950) ("It is a fundamental rule of contract law that an acceptance must comply with the terms of the offer."). "New York follows the traditional common law view, which holds that an acceptance that is conditioned on terms at variance with those in the offer operates as a counteroffer and terminates the original offer." John's Insulation, Inc. v. Siska Constr. Co., 671 F.Supp. 289, 292 (S.D.N.Y.1987) (citations omitted); see also Krumme v. Westpoint Stevens Inc., 143 F.3d 71, 83-84 (2d Cir.1988) (" 'A proposal to accept the offer if modified or an acceptance subject to other terms and conditions [is] equivalent to an absolute rejection of the offer.' ") (alteration in original) (quoting Poel v. Brunswick-Balke-Collender Co., 216 N.Y. 310, 319, 110 N.E. 619, 622 (1915)); Homayouni v. Paribas, 241 A.D.2d 375, 376, 660 N.Y.S.2d 413, 414 (1st Dep't 1997) ("A qualified acceptance such as this is nothing more than a counteroffer.") (citations omitted).

However, "[t]he offer and acceptance are not required to meet with geometric precision in order to form a valid contract." Franklin Research & Development Corp. v. Swift Electrical Supply Co., 340 F.2d 439, 444 (2d. Cir.1964). For example, "expressions of assent by an offeree, which contain immaterial deviations from the original offer, do not constitute counter-offers but, rather, operate to bind the parties to an enforceable contract." Knapp v. McFarland, 344 F.Supp. 601, 613 (S.D.N.Y.1971), aff'd in part & rev'd in part on other grounds, 457 F.2d 881 (2d Cir.1972), cert. denied, 409 U.S. 850 (1972)); see also International Paper Co. v. Suwyn, 966 F.Supp. 246, 253-54 (S.D.N.Y.1997) ("a request for a modification of the offer coupled with an otherwise unqualified acceptance, which does not depend on the offeror's assent to the requested change, operates as an acceptance and a contract is thereby formed") (characterizing principle as the "grumbling acceptance" doctrine); Valashinas v. Koniuto, 283 A.D. 13, 17, 125 N.Y.S.2d 554, 558 (3d Dep't 1953), aff'd, 308 N.Y. 233, 124 N.E.2d 300 (1954) ("[I]f the acceptance of an offer is initially unconditional, the fact that it is accompanied with a direction or a request looking to the carrying out of its provisions, but which does not limit or restrict the contract, does not render it ineffectual or give it the character of a

counteroffer .").

Here, it is undisputed that the December 5 letter operated as an offer. It is not alleged by any party that Plaintiff signed that letter. Rather, Plaintiff faxed the December 11 letter to Hillier in response, prior to commencing work at Hillier. Hillier contends that the December 11 letter is a "grumbling acceptance" that requests additional terms to which Defendant was not required to assent. Conversely, Mr. Ladau contends that his letter operated by law as a rejection and counter-offer. Thus, the central issue is whether the terms stated in the December 11 letter were critical to Plaintiff's assent and therefore constituted a rejection and counter-offer to the December 5 letter. See Restatement (Second) of Contracts § 61 cmt. a. (1981) (hereinafter "Restatement") ("the mere inclusion of words requesting a modification of the proposed terms does not prevent a purported acceptance from closing the contract unless, if fairly interpreted, the offeree's assent depends on the offeror's further acquiescence in the modification").

*\*4* Despite the fact that the December 11 letter begins by stating that it is an "acceptance of [the December 5 letter]," it purports to "confirm" various terms which are "mutually understood and agreed." These terms outline significant and specific additions to the incentive compensation provision provided for in the December 5 letter. By using language such as "[c]onfirming" and "it is mutually understood and agreed," it can hardly be said that Plaintiff's acceptance of the December 5 letter was "clear, unambiguous and unequivocal." *King v. King*, 208 A.D.2d at 1144, 617 N.Y.S.2d at 594 (citations omitted). Rather, the letter "qualified essential terms of the Agreement ... [which] makes it far from clear that the contract would have been acceptable ... if the changes were not granted." *International Paper*, 966 F.Supp. at 254 (citing *King v. King*, 617 N.Y.S.2d at 594); *see also* Restatement § 59 ("A reply to an offer which purports to accept it but is conditional on the offeror's assent to terms additional to or different from those offered is not an acceptance but is a counter-offer."). Therefore, I find that the December 11 letter constituted a rejection and counter-offer to the December 5 letter.

Hillier objects to the consideration of the December 11 letter, *inter alia*, because it was never signed by the party to be charged ( *i.e.*, Hillier), a requirement under the New York Statute of Frauds, N.Y. CLS Gen. Oblig. § 5-701(a)(1) (2003). Therefore, Hillier contends, there is no signed writing on which Plaintiff may base his claim. However, under New York law, the original offering party which receives a counter-offer may accept that counter-offer by thereafter performing under the contract, even if there is no written acceptance of the counter-offer. See *International Paper*, 966 F.Supp. at 254 (noting that "[i]f the original offeror does not respond to the counteroffer, but proceeds with performance of the contract, his conduct may be considered an expression of assent to the terms of the counteroffer") (citing *John's Insulation, Inc. v. Siska Constr. Co.*, 671 F.Supp. 289, 292 (S.D.N.Y.1987)). Thus, Hillier's subsequent performance of the contract (by employing Plaintiff), despite its silence on the terms of Plaintiff's counter-offer, constituted acceptance of the counter-offer proposed by Plaintiff in the December 11 letter.[FN3]

> FN3. Furthermore, it is not clear that the agreement "by its terms" cannot be performed within one year. Nor is it clear that Plaintiff's claim is one for a "perpetual commission" as defined by the New York courts and the cases cited by Defendant. ( *See* Def's Opp. 4-5.) Rather, it is a commission solely for fees "brought in" by Plaintiff.

Defendant argues that such a construction will result in any employee in the State of New York being able to "repeatedly alter the terms of his or her employment and compensation merely by sending their employer a written demand for a higher salary and then simply appearing for work the next day." (Def.'s Opp. at 11.) However, such fears are unfounded. This is not a case where an employee sent a letter asking for a pay increase and then went back to work. Here, *before* an agreement for employment was ever reached, Plaintiff rejected the offer of employment by the employer and proposed a counter-offer. By remaining silent yet accepting the services of Plaintiff on the date proposed in the December 11 counter-offer, Defendant accepted the counter-offer by its conduct.[FN4] Nothing prevented Defendant from replying to and rejecting Plaintiff's counter-offer or refusing the services of Plaintiff.

> FN4. Furthermore, even in its own papers, Defendant relies on the December 11 letter as evidence of Plaintiff's acceptance of Defendant's offer. ( See Def's Counter-Statement ¶ 3 ("Hillier states that Plaintiff explicitly accepted the terms of its offer for at-will employment, and later faxed a letter to Hillier ... which confirmed that he would commence his employment with Hillier ... pursuant to the terms set forth in the Offer Letter."); Def's 56.1 Statement ¶ 4 ("[the December 11 letter] confirmed Plaintiff's acceptance of Hillier's employment offer").) Additionally, in his declaration, Mr. Geier admits that the December 11 letter "accurately state[d] ... that he would receive incentive compensation based on the formula set forth in the Offer Letter for the Pittston, Westpac Bank, SCI and Time, Inc. projects he independently generated for the firm prior to his start date." (Declaration of Gerard F.X. Geier, II in Support of Hillier's Motion for Partial Summary Judgment, sworn to September 11, 2003, at ¶ 5.) This term is nowhere to be found in the December 5 letter. Defendant's silence as to the letter, in light of these facts, can only support an inference that Defendant's conduct accepted the terms of the December 11 agreement.

*5 Defendant also argues that it could not have accepted Plaintiff's counter-offer by its conduct because Plaintiff merely performed his employment duties in accordance with the December 5 offer and Defendant compensated Plaintiff according to the terms of that offer. However, for the reasons discussed *supra,* the December 5 letter was rejected by Plaintiff by the December 11 letter, and a counter-offer was stated via the same. Therefore, there was no valid agreement based on the December 5 letter, except as it is incorporated into the December 11 counter-offer.

Defendant additionally argues that under New York law, an employee is not entitled to receive commissions on fees and profits that are received after termination unless the agreement between the parties so state. See Def's Opp. at 5; *UWC, Inc. v. Eagle Indus., Inc.,* 213 A.D.2d 1009, 1011, 624 N.Y.S.2d 321, 322-23 (4th Dep't 1995). However, for the reasons stated above, such an agreement *did* exist based upon Plaintiff's December 11 counter-offer and Defendant's acceptance of that offer through its acquiescence.

Accordingly, Plaintiff's motion for partial summary judgment is granted, and Defendant's motion for partial summary judgment on the same is denied.

### III. Defendant's Cross-Motion for Summary Judgment

Defendant's Cross-Motion for Summary Judgment attempts to narrow the scope of the breach of contract claim, discussed *supra*. First, Defendant claims that Plaintiff is not entitled to continuing incentive compensation payments for repeat work for existing firm clients when he is not solely responsible for bringing the projects into the firm. (Def's Opp. at 14-15.) The plain language of the December 5 letter states that Plaintiff would be entitled to accrue incentive compensation on the "net fees brought in by [him] to Hillier/Eggers" and the "net profit earned on the projects brought in by [him] to Hillier/Eggers." However, disputed issues of fact exist as to which projects were "brought in" by Plaintiff. Therefore, summary judgment cannot be entered on the basis of Defendant's assertion that "brought in" means "solely responsible ."

Next, Defendant asks that the Court enter summary judgment on the issue of whether Plaintiff is "entitled to any 'lifetime commissions' for client projects which were not under contract at the time of Plaintiff's termination." (Def.'s Opp. at 15-17.) This appears specifically targeted at the third category of projects listed in the Complaint. (Compl.¶ 13.) However, that paragraph expressly states that it is making a claim for "clients and projects which were *brought in by Mr. Ladau."* ( *Id.* (emphasis added).) Therefore, the same issues of fact exist as to what constituted "brought in" under the contract.

Lastly, Defendant asks that the Court enter summary judgment on the second claim for relief in the complaint because plaintiff fails to present a valid claim for alleged non-payment of wages under the New York Labor Laws. Defendant contends that under the New York Labor Laws, incentive pay does not constitute a "wage" until it is actually earned and vested. See Def's Opp. at 17-18; *Dean Witter*

*Reynold, Inc. v. Ross,* 75 A.D.2d 373, 381, 429 N.Y.S.2d 653, 658 (1st Dep't 1980) (finding employee had no vested interest in additional compensation of "incentive pay" that, under the applicable plan, did not become earned until the end of production period when all appropriate costs were reconciled, and therefore deductions under incentive plan were not deductions of 'wages' in violation of Labor Laws). However, as Plaintiff points out, the type of incentive compensation at issue here constitutes wages under the Labor Law, as explained by the Court of Appeals in *Reilly v. Natwest Mkts. Group, Inc.,* 181 F.3d 253 (2d Cir.1999). In *Reilly,* the Court of Appeals analyzed *Dean Witter* and determined that it "stands for the unremarkable proposition that incentive pay does not constitute a 'wage' until it is actually earned and vested." 181 F.3d at 264. However, consistent with subsequent New York case law cited, *Reilly* held that where "pay was guaranteed under the Percentage Bonus formula to be a percentage of the revenue he generated, and was not left to [defendant's] discretion," it "falls comfortably within the definition of a 'commission' that is expressly included within the Labor Law's definition of 'wages.' " *Id.* at 265 (citations omitted). The sort of commission found in *Reilly* is precisely the type of commission at issue here. Therefore, Defendant's motion for summary judgment is denied, except to the extent that any alleged compensation due has not yet vested under the terms of the contract.

*Conclusion*

**\*6** For the reasons stated above, Plaintiff's motion for partial summary judgment is granted. Except as noted, Defendant's cross-motion for summary judgment is denied.

SO ORDERED

S.D.N.Y.,2004.
Ladau v. Hillier Group, Inc.
Not Reported in F.Supp.2d, 2004 WL 691520 (S.D.N.Y.)


Motions, Pleadings and Filings (Back to top)

• 1:02cv04703 (Docket) (Jun. 19, 2002)
END OF DOCUMENT

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.