UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LISA-ATHENA S. ABU HANTASH, in her
individual capacity and as mother and natural
guardian of JORDAN-ANNETTE JAZZMIN
RICHARDSON, a minor, and JORDAN
RICHARDSON, INC., a Virginia Corporation,

Docket No.: 07 Civ. 3363

                                        *Plaintiffs*,                        **VERFIED COMPLAINT**

                -against-

V MODEL MANAGEMENT NEW YORK, INC.
and VNY MODEL MANAGEMENT, LLC,

                                        *Defendants*.

Plaintiffs, LISA-ATHENA S. ABU HANTASH ("Abu Hantash"), in her individual

capacity and in her capacity as mother and natural guardian of JORDAN-ANNETTEE

JAZZMIN RICHARDSON, a minor, and JORDAN RICHARDSON, INC. (the "Company"), by

and through their attorneys, NISSENBAUM LAW GROUP, LLC, complaining of the

Defendants, V MODEL MANAGEMENT NEW YORK, INC. ("V Management") and VNY

MODEL MANAGEMENT, LLC ("VNY") (collectively "Defendants"), allege the following,

upon information and belief, as their Complaint:

## NATURE OF THE ACTION

1.    This is an action arising out of two (2) agreements between Jordan-Annette

Jazzmin Richardson ("Jordan"), a minor, and Defendant V Management and Defendant VNY,

respectively.  It is Plaintiffs' contention that the Jordan/V Management agreement, signed on

April 22, 2005, was disaffirmed by Jordan and, therefore, no longer enforceable.  The law is

quite clear that infants always have the common law right to disaffirm a contract barring certain

exceptions, namely, where a court approves the contract.  Because the parties hereto did not seek

1

court approval of Ms. Richardson's contract with V Management, Plaintiff Jordan Richardson is allowed to disaffirm her agreement outright.

2.       Regarding the second agreement, it is Plaintiffs' contention that the Jordan or Company/VNY agreement is unenforceable for various reasons including, but not limited to:

(a)       Plaintiffs' rescinded their willingness to enter into an agreement with VNY prior to Defendant VNY's acceptance of same.  Specifically, Ms. Richardson's mother sent Lana Winters, President of VNY, correspondence on February 16, 2007 advising her that the second contract was rejected for failing to sign the second agreement on numerous occasions. After receiving Plaintiffs' rejection of the second agreement, Defendant VNY, by and through its attorney, Natalia Nastaskin, Esq., sent correspondence to Plaintiffs' on February 27, 2007 that included a signed counterpart by VNY;

(b)       The second agreement contains numerous handwritten modifications which indicate that there was no "meeting of the minds";

(c)       The second agreement is not signed by all of the parties who have agreed to be bound;

(d)       Because the second agreement is unenforceable as a writing, it violates the Statute of Frauds; and,

(e)       Even if the second agreement could be interpreted as validly executed writing between the parties, it was disaffirmed by Jordan.

3.       As such, Plaintiffs seek Judgment against the Defendants for declaratory relief pursuant to the Federal Declaratory Act, 28 U.S.C.A. § 2201 et seq., and rescission with regard to the two modeling/management agreements.

2

4.      Plaintiffs also seek an accounting from Defendants regarding all monies received from third persons, deductions made and expenses charged with respect to the modeling services performed by Jordan.

5.      Finally, Plaintiffs also seek temporary and permanent injunctive relief restraining and enjoining Defendants, their employees, agents, servants and all persons acting under their direction, control or in concert with them from asserting that the agreement dated April 22, 2005 and between Jordan Richardson, a minor, and Defendant V Model Management New York, Inc. and/or the alleged agreement between Plaintiff Jordan and/or Plaintiff Jordan Richardson, Inc. and Defendant VNY Model Management, Inc. is enforceable and from interfering with Jordan and/or Plaintiffs' contract relations with any person, firm, company, corporation and/or other entity with regards to Jordan Richardson's modeling career.

## JURISDICTION

6.      The United States Court of Appeals for the Second Circuit has recognized that the amount in controversy in actions seeking declaratory relief is measured by the value of the object of the litigation.  For the year 2006, Jordan, who is the subject of the agreements which form the basis of the within matter, earned over four hundred thousand dollars ($400,000.00) in gross revenue.

7.      Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 [a] [1], [c] [1] in that the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of different States.

## VENUE

8.      Pursuant to 28 U.S.C. §1391 [a] [1] and [c], venue is proper in the Southern District of New York because Defendant VNY's principal place of business is located at 928 Broadway Avenue, Suite 801, New York, New York 10010 and, as such, is subject to personal jurisdiction in the within district.

## PARTIES

9.      At all times hereinafter mentioned, Plaintiff Abu Hantash was and still is a citizen of the United States of America residing at 22354 Graystone Drive, Carrollton, Virginia 23314.

10.     At all times hereinafter mentioned, Plaintiff Company was and still is a corporation duly organized and existing under and by virtue of the laws the State of Virginia with a principal place of business located at 2711 Cunningham Drive #101, Hampton, Virginia 23666.

11.     At all times hereinafter mentioned, Plaintiff Jordan was and still is a citizen of the United States of America residing at 22354 Graystone Drive, Carrollton, Virginia 23314.

12.     At all times hereinafter mentioned, Plaintiff Abu Hantash was and still is Jordan's mother.

13.     At all times hereinafter mentioned and upon information and belief, Defendant V Management was and still is a corporation duly organized and existing under and by virtue of the laws the State of New York with a principal place of business located at 1133 Broadway, Suite 1201, New York, New York 10010.

14.     At all times hereinafter mentioned and upon information and belief, Defendant VNY was and still is a limited liability company duly organized and existing under and by virtue

4

of the laws of the State of New York with a principal place of business located at 928 Broadway,

Suite 801, New York, New York 10010.

     15.    At all times hereinafter mentioned and upon information and belief, Defendant

VNY was incorporated in the State of New York on or about May 10, 2005.

     16.    At all times hereinafter mentioned and upon information and belief, Defendant

VNY was incorporated to carry out the business of its predecessor, Defendant V Management.

**STATEMENT OF FACTS UNDERLYING**
**PLAINTIFF'S CLAIMS OR RELIEF GENERAL ALLEGATIONS**

**Background**

     17.    Currently, Jordan is a seventeen-year old professional model.

     18.    Prior to 2005, Jordan was not associated with any particular modeling agency or

management company.

     19.    In or about April 2005, Jordan, as a minor, signed an agreement with Defendant V

Management to act as her manager, representative and advisor for Jordan's modeling career.

     20.    Over the past couple of years, Jordan's modeling career has picked up significant

momentum and she has become increasingly recognizable nationwide.

     21.    In fact, Jordan's gross earnings for the year 2006 were in excess of four hundred

thousand dollars ($400,000.00).

     22.    On many occasions it was not feasible for Plaintiff Abu Hantash to accompany

her daughter to modeling assignments.    As such, Plaintiff Abu Hantash relied heavily on

Defendants to ensure the well-being and safety of her daughter.

23.     Since 2005, Plaintiff Abu Hantash lost all confidence in Defendants' ability to protect Jordan from physical harm and to act in her best interests.  In fact, all Plaintiffs believe that during the term of engagement, Defendants did not have Jordan's best interest in mind.

24.     Plaintiff Abu Hantash's distrust in Defendants was enhanced by a specific incident that occurred in New York City on or about September 13, 2006.  On that particular occasion, Jordan was physically attacked and choked unconscious by another model at a launch party for a magazine.

25.     Although Jordan was under the care of Defendants and Lana Winters, President of Defendants and an individual who witnessed the attack, Defendants failed to take any action to prevent the resulting physical harm to Jordan, including calling for medical attention and/or reporting the incident to the New York City Police Department.

26.     Making matters worse, Defendants failed to disclose the incident to Plaintiff Abu Hantash, only to find out about the incident from Jordan some time after she had left New York City.

**2005 Agreement**

27.     Prior to 2005, Jordan was not associated with a modeling agency or management company.

28.     On or about April 22, 2005, Defendant V Management and Jordan executed a model management agreement and addendum thereto (collectively, the "2005 Management Agreement").  A true and accurate copy of the 2005 Management Agreement is annexed hereto as Exhibit A.

29.    The 2005 Management Agreement was signed by Jordan.  At the time that Jordan executed the 2005 Agreement, she was only sixteen (16) years old. Ex. A at 6.

30.    Plaintiff Abu Hantash also signed the 2005 Management Agreement in her capacity as parent and legal guardian for Jordan and to indicate her assent to her daughter's entry into the 2005 Management Agreement. Id.

31.    By signing the 2005 Management Agreement in this capacity, Plaintiff Abu Hantash did not agree nor was obligated to perform and/or assume any obligations under the 2005 Management Agreement. Id.

32.    Pursuant to the 2005 Management Agreement, Defendant V Management was to serve as Jordan's "sole and exclusive manager, representative and adviser throughout the world with respect to [Jordan's] professional career, talents, services and business affairs in the fashion, modeling, and entertainment industries…." Id. at ¶ 1.

33.    The initial term of the 2005 Management Agreement was for two (2) years terminating on April 22, 2007.  Id. ¶ 3.

34.    Furthermore, the 2005 Management Agreement provided that the term was automatically extended for "additional periods of two (2) years each … unless [Defendant V Management] notifie[d] [Jordan], in writing, that it wishe[d] to terminate this Agreement at any time before the expiration of the Term." Id.

35.    Accordingly, the 2005 Management Agreement is a perpetual contract for services and denies Jordan any rights to terminate it.

7

**Formation of Jordan Richardson, Inc.**

36.     In or about early 2006, Defendants recommended that Plaintiff Abu Hantash and Jordan form a corporation for Jordan.

37.     With the assistance of an attorney, on or about June 20, 2006, Plaintiff Company was incorporated under the laws of the State of Virginia.

38.     The sole shareholder of Plaintiff Company is Jordan.

39.     The sole officer and/or director of Plaintiff Company is Jordan.

40.     Accordingly, Jordan is the only person who can bind Plaintiff Company to any agreements and/or other obligations.

**2006 Agreement**

41.     In or about June 2006, Defendants informed Plaintiff Abu Hantash that another management agreement needed to be executed because Defendant V Management changed its name to "VNY Model Management, LLC."

42.     When Plaintiff Abu Hantash inquired further as to why a new agreement had to be executed, Defendants represented to Plaintiff Abu Hantash that they would not be able to pay Jordan for the work performed pursuant to the 2005 Management Agreement until a new agreement was executed.

43.     Based on Defendants' representation, Plaintiff Abu Hantash requested that Defendant VNY forward to her a new agreement to review and, if acceptable, execute with Jordan and/or the Company.

44.     However, Defendants' representation that they would not be able to pay Jordan for the work performed pursuant to the 2005 Management Agreement until a new agreement was

executed turned out to be false.  Upon information and belief, Defendant V Management and/or Defendant VNY continued to pay other models pursuant to a management agreement with Defendant V Management even though a new agreement with Defendant VNY was not executed by such models.

45.    At no point in these discussions did Defendants inform Plaintiff Abu Hantash that an agreement with Defendant VNY extended the initial term of the 2005 Management Agreement to April 22, 2008.

46.    Nevertheless, on or about June 19, 2006, Defendant VNY faxed to Plaintiff Abu Hantash a model management agreement dated June 19, 2006 ("2006 Management Agreement") between Defendant VNY and Plaintiff Company.

47.    At the time that Plaintiff Abu Hantash received the 2006 Management Agreement, Defendant VNY had not executed it.

48.    The 2006 Management Agreement contained the same provisions as the 2005 Management Agreement with the exception that the 2006 Management Agreement extended the initial term until June 2008 (the 2005 Management Agreement was set to expire on April 22, 2007).

49.    The 2006 Management Agreement also provided for automatic renewal for additional periods of two (2) years.  Similar to the 2005 Management Agreement, the 2006 Management Agreement gave Defendant VNY a unilateral right to terminate the agreement.

50.    Upon receipt of the 2006 Management Agreement, Plaintiff Abu Hantash reviewed it and incorporated her hand-written revisions directly onto the document.  A true and accurate copy of the 2006 Management Agreement with Plaintiffs' hand-written proposed

changes and the fax verification that same was sent to Defendants is annexed thereto as Exhibit B.

51.    Specifically, Plaintiff Abu Hantash revised the 2006 Management Agreement by inserting, inter alia, the following provision ("Termination Clause") on the signature page of the 2006 Management Agreement: "Jordan Richardson, Inc. has the right to terminate the agreement w/ VNY Model Mgt, LLC with 30 days prior notification of the conclusion of said Agreement." Ex. B at 6.

52.    Plaintiff Abu Hantash signed the 2006 Management Agreement in her capacity as the model's parent and/or legal guardian.  Ex. B at 6.

53.    However, Jordon and/or Plaintiff Company did not execute the 2006 Management Agreement.

54.    Nevertheless, on or about July 6, 2007, Plaintiff Abu Hantash faxed the 2006 Management Agreement to Defendant VNY for her review and signature.

55.    Defendant VNY did not sign the 2006 Management Agreement.    Instead, Defendants rejected Plaintiff Abu Hantash's changes to the 2006 Management Agreement and directed her to "white out" and write new language on the 2006 Management Agreement.

56.    On or about July 17, 2006, Plaintiff Abu Hantash modified the language of the Termination Clause in the 2006 Management Agreement as instructed to read as follows: "Jordan Richardson or representative has the right to cancel the contract with a written notice 30 days prior to the expiration of the contract."  A true and accurate copy of the 2006 Management Agreement with the modified Termination Clause (hereinafter referred to as "Second Signature Page") is attached hereto as Exhibit C.

57.     Again, Plaintiff Abu Hantash signed the Second Signature Page in her capacity as the model's parent and/or legal guardian.

58.     However, Jordon and/or Plaintiff Company did not execute the 2006 Management Agreement.

59.     Again, Defendant VNY did not execute the 2006 Management Agreement.

60.     In addition, Defendant VNY did not provide a response to Plaintiff Hantash with regard to her revisions as set forth in the 2006 Management Agreement.

61.     It was not until October 2006 that Plaintiff Abu Hantash realized that Defendant VNY did not provide her with a copy of the executed 2006 Management Agreement.

62.     From October 2006 to February 16, 2007, Plaintiff Abu Hantash, herself and by and through her representatives, contacted Defendant VNY several times requesting that Defendant VNY provide her with a copy of the executed 2006 Management Agreement. During this time, Jordan's signature and the Company's signature remained absent from the 2006 Management Agreement.

63.     On or about February 12, 2007, Defendant VNY informed Plaintiff Abu Hantash that she would have a copy of the executed 2006 Management Agreement no later than February 16, 2007.

64.     Defendant VNY, however, failed to provide a copy of the executed 2006 Management Agreement to Plaintiff Abu Hantash on February 16, 2007.

65.     In a letter dated February 16, 2007 which was sent via Federal Express on February 17, 2007, Plaintiff Abu Hantash informed Defendant VNY that because it failed to provide her with a copy of the executed 2006 Management Agreement, she rejected the 2006

11

Management Agreement. A true and accurate copy of the correspondence dated February 16,

2007 is attached hereto as Exhibit D. True and accurate copies of Federal Express receipt and

signature receipt are annexed hereto as Exhibits E and F.

> 66. Specifically, Plaintiff Abu Hantash wrote the following:

> "I have made several repeated attempts to get a copy of the signed [2006 Management Agreement] (dated June 2006 and expires June 2008) . . . Since these attempts have been unsuccessful, the only valid contract I have with you is the [2005 Management Agreement] dated 22 April 2005 which expires 22 April 2007.

> Know then that at the 22 April 2007 contract expiration date, I will not renew Jordan Richardson's contract with your agency. Do not schedule any jobs for her beyond this date."

Ex. D.

> 67. More than a week after Plaintiff Abu Hantash rejected the 2006 Management

Agreement and via correspondence dated February 27, 2007, Natalie Nastaskin, Esq.

("Nastaskin"), attorney for Defendant VNY, provided Jordan with the executed Second

Signature Page of the 2006 Management Agreement. A true and accurate copy of the

correspondence dated February 27, 2007 and Second Signature Page is attached hereto as Exhibit

G.

> 68. In that same correspondence, Defendant VNY, by and through its attorney,

informed Jordan that the 2006 Management Agreement was in "full force and effect and may not

be terminated, except in accordance with the terms thereof." Id..

> 69. However, Plaintiff Abu Hantash had already rejected the 2006 Management

Agreement on February 17, 2007 and before Defendant VNY accepted the 2006 Management

Agreement on February 27, 2007.

70.     In addition, neither Plaintiff Jordan nor Plaintiff Company executed the 2006 Management Agreement. Ex. E.

71.     The only person other than Defendant VNY to sign the 2006 Management Agreement was Plaintiff Abu Hantash.

72.     However, Plaintiff Abu Hantash signed the 2006 Management Agreement only in her capacity as mother and/or legal guardian for Jordan, who was not even a party to the 2006 Management Agreement, and to indicate her assent to her daughter's entry into the 2006 Management Agreement.  Ex. B at 6.

73.     By signing the 2006 Management Agreement in this capacity, Plaintiff Abu Hantash did not agree nor was obligated to perform and/or assume any obligations under the 2006 Management Agreement. Id.

74.     In addition, via correspondence dated March 2, 2007, Ms. Nastaskin again reiterated to Plaintiff Abu Hantash that the 2006 Management Agreement was in full force and effect.  A true and accurate copy of the correspondence dated March 2, 2007 without the enclosure is attached here to as Exhibit H.

75.     Furthermore, the correspondence provided the following: "[f]or purposes of clarity, [VNY Model Management, LLC] has the right to terminate the Agreement at any time during the Term with written notice to Model.  However, Model may not terminate this Agreement except within thirty (30) days prior to expiration of then-current period of the Agreement (please see hand-written clause on signature page)." Id.

76.     Clearly and as evidenced by Defendant VNY's need to clarify the language of the Termination Provision, there was no meeting of the minds by Defendant VNY and Plaintiffs

with regard to the circumstances under which Plaintiffs could terminate the 2006 Management Agreement.

### **Jordan Disaffirms Any and All Agreements With Defendants**

77.    Via correspondence dated March 21, 2007, Jordan, by and through her attorneys, informed Defendant VNY, by and through its attorney, Ms. Nastaskin, that any and all agreements with Defendants were terminated and Jordan's last day with Defendant VNY would be April 22, 2007.  A true and accurate copy of the correspondence dated March 21, 2007 is annexed hereto as Exhibit I.

78.    In addition, via correspondence dated April 11, 2007 to Ms. Nastaskin, Jordan, by and through her attorneys, reinforced to Defendants that she had disaffirmed and/or terminated any and all agreements with Defendants.  A true and accurate copy of the correspondence dated April 11, 2007 is annexed hereto as Exhibit J.

79.    Jordan wishes to continue her modeling career and eventually sign with another modeling agency and/or management company without fear that she will be held to the obligations under the 2005 Management Agreement and 2006 Management Agreement.

### **Defendants Engaged In Fraudulent Accounting Practices**

80.    When Jordan performed a modeling assignment, the client retaining Jordan's modeling services would remit payment directly to Defendants.

81.    Defendants would then retain a portion of the payment as and for their "management" fee and other limited deductions for expenses and advancements. See e.g., Ex. A ¶¶ 5(A) and 6; see also Ex. B ¶¶ 5(A) and 6.

14

82.    Once the fees, expenses and advancements were deducted, Defendants were obligated to remit the balance of the payment to Jordan within ten (10) days. Ex. A ¶ 5(A); Ex. B ¶ 5(A).

83.    Upon information and belief, Defendants failed to remit payment to Jordan for some of the modeling services she provided.

84.    Furthermore and upon information and belief, Defendants made improper deductions for expenses and advancements and/or did not accurately reflect the costs, expenses and advancements incurred by Defendants with regards to Jordan's modeling services.

**COUNT ONE**
**(Declaration that 2005 Management Agreement is Null and Void With
Respect to Jordan Richardson and Plaintiff Abu Hantash)**

85.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth at length herein.

86.    At all relevant times hereto, Jordan was and still is an infant.

87.    Jordan clearly and unequivocally disaffirmed the 2005 Management Agreement with Defendant V Management by providing written notice of same on or about March 21, 2007 and April 11, 2007.

88.    Furthermore, Plaintiff Abu Hantash, in her capacity as mother and legal guardian of Jordan, signed the 2005 Management Agreement only to indicate that she consents to Jordan entering the 2005 Management Agreement with Defendant V Management.

89.    As such, Plaintiff Abu Hantash is not bound by the 2005 Management Agreement and its obligations thereunder.

15

90.     Pursuant to the Federal Declaratory Act, 28 U.S.C.A. § 2201 et seq., this Court may declare the rights and other legal relations of any interested party seeking such a declaration.

91.     In light of the foregoing, Plaintiffs respectfully request that the Court declare the 2005 Management Agreement as between Defendant V Management and Jordan Richardson is null and void as of April 22, 2007, at the latest, and that neither Jordan Richardson nor Plaintiff Abu Hantash are obligated to perform thereunder.

**COUNT TWO**
**(Declaration that the 2005 Management Agreement is Rescinded on**
**the Grounds that the Terms of the Agreement Are Unconscionable)**

92.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth at length herein.

93.     The 2005 Management Agreement had an initial term of two (2) years terminating on April 22, 2007.

94.     However, the 2005 Management Agreement provided that the agreement was automatically renewed for additional periods of two (2) years unless Defendant V Management notified Plaintiffs otherwise.

95.     The 2005 Management Agreement also gave Defendant V Management a unilateral right to terminate the contract at any time before expiration of the agreement.

96.     However, the 2005 Management Agreement does not provide Plaintiffs with the right to terminate the agreement under any circumstance.

97.     In essence, the 2005 Management Agreement is a perpetual contract for services. As long as Defendant V Management wished to represent Jordan, Jordan was obligated to provide modeling services for and on behalf of V Management.

16

98.    The terms of the 2005 Management Agreement are so one-sided so as to have Plaintiffs bound by the agreement would be unconscionable.

99.    Therefore, in the event that the Court does not declare that Jordan Richardson has the unfettered right to disaffirm the 2005 Management Agreement, Plaintiffs respectfully request that the Court rescind the 2005 Management Agreement between Defendant V Management and Jordan Richardson on the basis that it is unconscionable and declare that neither Plaintiff Jordan Richardson nor Plaintiff Abu Hantash are obligated to perform thereunder.

**COUNT THREE**
**(Declaration that 2006 Management Agreement is Not an Enforceable Contract with Respect to Plaintiff Company, Jordan Richardson and/or Plaintiff Abu Hantash)**

100.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth at length herein.

101.    The 2006 Management Agreement is not definite and does not embody terms that were agreed to by the parties.  Specifically, the 2006 Management Agreement does not identify whether Plaintiffs Jordan Richardson and/or Jordan Richardson, Inc. are to be bound by the 2006 Management Agreement.

102.    Nevertheless, Plaintiff Jordan Richardson, in her individual capacity and/or her capacity as director and officer of Jordan Richardson, Inc., did not sign the 2006 Management Agreement between Defendant VNY Management and Plaintiff Jordan Richardson, Inc.

103.    By not executing the 2006 Management Agreement, Jordan Richardson, in her individual capacity and/or her capacity as director and officer of Jordan Richardson, Inc., Plaintiffs did not accept the terms of the 2006 Management Agreement.

17

104.   Furthermore, Jordan Richardson in her individual capacity and/or her capacity as director and officer of Jordan Richardson, Inc., did not otherwise accept the terms of the 2006 Management Agreement.

105.   Likewise, Plaintiff Abu Hantash is not authorized to sign on behalf of Plaintiff Company.  In fact, her signature on the 2006 Modification Agreement states that she is signing in the capacity of legal and natural guardian for Jordan Richardson, not as an authorized representative of Jordan Richardson, Inc.

106.   Furthermore, pursuant to GOL 5-701(a)(1), where an agreement, by its terms, is not to be performed within one year from the making thereof, the agreement is void unless it is in writing and subscribed by the party to be charged therewith.

107.   The 2006 Management Agreement had an initial term of two (2) years and, accordingly, could not be performed in one year.

108.   Plaintiffs Jordan Richardson, Inc. and/or Jordan Richardson did not sign the 2006 Management Agreement.

109.   As such, the 2006 Management Agreement is void as it does not comply with New York's Statute of Frauds.

110.   In addition, there was no consideration exchanged between Plaintiff Abu Hantash and Defendant VNY Management to deem the 2006 Management Agreement enforceable with regard to Plaintiff Abu Hantash.

111.   In addition, Plaintiff Abu Hantash did not accept the terms of the 2006 Management Agreement or agreed to be bound by the terms of the 2006 Management Agreement.

18

112.    Rather, Plaintiff Abu Hantash, in her capacity as mother and legal guardian for Jordan, consented to Jordan entering the 2006 Management Agreement as indicated by her signature on the 2006 Management Agreement.

113.    Alternatively, even if the Court were to determine that Plaintiff Abu Hantash did not execute the 2006 Management Agreement in this capacity, the 2006 Management Agreement (by adding the modifications including the Termination Provision) was a counteroffer to Defendant VNY's Preliminary Agreement.

114.    However, Before Defendant VNY accepted the terms of the 2006 Management Agreement, Plaintiffs, via correspondence dated February 16, 2007, revoked the 2006 Management Agreement. See Ex. D, E and F.

115.    Via correspondence dated February 27, 2007, one week after Plaintiffs revoked their counteroffer, Defendant VNY accepted the terms of the 2006 Management Agreement. Ex. G.

116.    As Plaintiffs revoked the 2006 Management Agreement prior to Defendant VNY's acceptance of same, the 2006 Management Agreement is not enforceable with regard to Plaintiffs.

117.    As such, Plaintiffs respectfully request that the Court declare that the 2006 Management Agreement between Defendant VNY Management and Plaintiff Company is not enforceable with respect to Plaintiff Abu Hantash, Plaintiff Company and/or Plaintiff Jordan Richardson.

**COUNT FOUR**
**(Declaration that 2006 Management Agreement is Null and Void**
**with Respect to Plaintiff Company and/or Jordan Richardson)**

118.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth at length herein.

119.    In the event that the Court denies the relief requested in the Third Cause of Action, Plaintiffs respectfully request that the Court declare that the 2006 Management Agreement is null and void with respect to Plaintiff Abu Hantash, Plaintiff Company and/or Jordan Richardson.

120.    At all relevant times hereto, Jordan was and still is an infant.

121.    Jordan clearly and unequivocally disaffirmed the 2006 Management Agreement by providing written notice to Defendant VNY of same on or about March 21, 2007 and April 11, 2007.

122.    Furthermore, Plaintiff Abu Hantash, in her capacity as mother and legal guardian of Jordan, signed the 2006 Management Agreement only to indicate that she consented to Jordan entering the 2006 Management Agreement with Defendant VNY.

123.    As such, Plaintiff Abu Hantash is not bound by the 2006 Management Agreement and the obligations contained therein.

124.    As such, Plaintiffs respectfully request that the Court declare the 2006 Management Agreement null and void with respect to Plaintiff Abu Hantash, Plaintiff Company and/or Plaintiff Jordan Richardson and further declare that Plaintiff Abu Hantash, Plaintiff Company and/or Plaintiff Jordan Richardson are not obligated to perform thereunder.

20

**COUNT FIVE**
**(Declaration that 2006 Management Agreement is Rescinded)**

125.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth at length herein.

126.    In the alternative, Defendants represented to Plaintiffs that unless they executed a new agreement with Defendant VNY, Defendant VNY would not be able to remit payment to Jordan for her services.

127.    Defendants knew, or should have known, that such representation was false at the time.

128.    In fact, Defendants continued to remit payment to other models even though they only had an agreement with Defendant V Management and did not execute another agreement with Defendant VNY.

129.    Defendants' false representation was material to Plaintiffs' decision to consider executing a new agreement with Defendant VNY.

130.    Defendants' misrepresentation in fact induced Plaintiff Abu Hantash to her detriment to sign the 2006 Management Agreement with Defendant VNY in her capacity as mother and legal guardian of Jordan and only to indicate that she consented to Jordan entering the 2006 Management Agreement with Defendant VNY.

131.    In the event that the Court denies the relief requested in the third and fourth causes of action, Plaintiffs respectfully request that the Court rescind the 2006 Management Agreement between Defendant V Management and Jordan Richardson on the basis that Defendants fraudulently induced Plaintiffs to execute the 2006 Management Agreement.

## COUNT SIX
### (Preliminary and Permanent Injunctive Relief)

132.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth at length herein.

133.    Jordan wishes to pursue her modeling career without fear that she will be held to the obligations under the 2005 Management Agreement and/or 2006 Management Agreement.

134.    For the reasons set forth above, there is a likelihood of success on the merits that the Court will determine that the 2005 Management Agreement and/or 2006 Management Agreement is unenforceable and/or null and void and/or rescinded.

135.    Defendants' insistence that one or both agreements are enforceable, without any basis in law or fact, has caused and will continue to cause damage to Plaintiffs and is causing irreparable harm to Plaintiffs for which there is no adequate remedy at law.

136.    In fact, Plaintiffs cannot find a manager willing to work with Jordan for fear of being embroiled in a lawsuit.

137.    Monetary relief alone is not adequate to address fully the irreparable injury that Defendants' actions have caused and will continue to cause Plaintiffs if not enjoined.

138.    Accordingly, Plaintiffs respectfully request that the Court issue a preliminary and/or permanent injunction restraining and enjoining Defendants, their employees, agents, servants and all persons acting under their direction, control or in concert with them from asserting that the agreement dated April 22, 2005 and between Jordan Richardson, a minor, and Defendant V Model Management New York, Inc. and/or the alleged agreement between Plaintiff Jordan and/or Plaintiff Jordan Richardson, Inc. and Defendant VNY Model Management, Inc. is enforceable and from interfering with Jordan and/or Plaintiffs' contract relations with any

22

person, firm, company, corporation and/or other entity with regards to Jordan Richardson's modeling career.

**COUNT SEVEN**
**(Accounting)**

139.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth at length herein.

140.    Upon information and belief, Defendants have failed to provide Plaintiff Jordan Richardson with payments, partially or in their entirety, with regard to the rendition of her services.

141.    Furthermore and upon information and belief, Defendants made improper deductions for fees, expenses and advancements from payments remitted by third-parties for Jordan's modeling services.

142.    Therefore, Plaintiffs respectfully request that the Court issue an Order directing Defendants to account to Plaintiffs for all monies received from third persons with regard to Jordan's modeling services and the amount and description of all deductions made by Defendants with respect to these payments.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs hereby demand Judgment of Defendants, V Model Management New York, Inc. and VNY Model Management, LLC, as follows:

a.    As to COUNT ONE, an Order declaring, pursuant to the Federal Declaratory Act, 28 U.S.C.A. § 2201 et seq., that the agreement dated April 22, 2005 between Jordan Richardson

23

and Defendant V Model Management New York, Inc. is null and void as of April 22, 2007, at the latest, and that neither Plaintiff Jordan Richardson nor Plaintiff Lisa-Athena S. Abu Hantash are obligated to perform thereunder;

        b.     In the alternative and as to COUNT TWO, an Order rescinding the agreement dated April 22, 2005 between Jordan Richardson and Defendant V Model Management New York, Inc.;

        c.     As to COUNT THREE, an Order, pursuant to the Federal Declaratory Act, 28 U.S.C.A. § 2201 et seq., declaring that the agreement dated June 19, 2006 is not enforceable with respect to Plaintiff Lisa-Athena S. Abu Hantash, Plaintiff Jordan Richardson, Inc. and/or Plaintiff Jordan Richardson;

        d.     In the alternative and as to COUNT FOUR, an Order, pursuant to the Federal Declaratory Act, 28 U.S.C.A. § 2201 et seq., declaring that the agreement dated June 19, 2006 between Plaintiff Jordan Richardson, Inc. and Defendant VNY Model Management, Inc. is null and void with respect to Plaintiff Lisa-Athena S. Abu Hantash, Plaintiff Jordan Richardson, Inc. and/or Plaintiff Jordan Richardson;

        e.     In the alternative and as to COUNT FIVE, an Order rescinding the agreement dated June 19, 2006;

        f.     As to COUNT SIX, issuance of a preliminary and/or permanent injunction restraining and enjoining Defendants, their employees, agents, servants and all persons acting under their direction, control or in concert with them from asserting that the agreement dated April 22, 2005 and between Jordan Richardson, a minor, and Defendant V Model Management New York, Inc. and/or the alleged agreement between Plaintiff Jordan and/or Plaintiff Jordan

24

Richardson, Inc. and Defendant VNY Model Management, Inc. is enforceable and from interfering with Jordan and/or Plaintiffs' contract relations with any person, firm, company, corporation and/or other entity with regards to Jordan Richardson's modeling career;

      g.     As to COUNT SIX, that the Court issue an Order requiring each of the Defendants to file with this Court and serve on Plaintiffs within ten (10) days after service of the preliminary and permanent injunctions, a report, in writing, under oath, setting forth in detail the manner and form in which the Defendants have complied with the preliminary and permanent injunctions;

      g.     As to COUNT SEVEN, an Order directing Defendants to account to Plaintiffs for all monies received from third persons with regard to Jordan's modeling services and the amount, description and documentation for all of the deductions made by Defendants and which are the subject of this Complaint;

      h.     As to COUNT ONE through COUNT SIX, an award to Plaintiffs of the costs and disbursements herein;

      i.     As to COUNT ONE through COUNT SIX, an award of attorney's fees; and

25

j.    Such other, further and different relief as to this Court may seem just, equitable and proper under the circumstances.

Dated: New York, New York

4/23/07

NISSENBAUM LAW GROUP, LLC
*Attorneys for Plaintiffs*

By: 

Gavin I. Handwerker (GIH 6191)
140 Broadway, 46th Floor
New York, New York 10007
(212) 871-5711

26

**VERIFICATION**

STATE OF _Virginia_ )
                                                    ss:
COUNTY OF _Isle of Wight_ )

LISA-ATHENA S. ABU HANTASH, being duly sworn, deposes and says:

I am one of the named Plaintiffs in the above matter and the mother and natural guardian of the infant Plaintiff, Jordan Richardson. As such, I am fully familiar with the facts and circumstances of the within action.

I have read the foregoing **COMPLAINT** and know the contents thereof; that the same are true to my own knowledge except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe to be true.

The grounds of my belief as to all matters not stated upon my own knowledge are based upon investigation conducted by my attorney's office on my behalf.

LISA-ATHENA S. ABU HANTASH

STATE OF _Virginia_ )
                                              :    ss.:
COUNTY OF _Hampton_ )

On the _21st_ day of _April_, 2007, before me, the undersigned, personally appeared LISA-ATHENA S. ABU HANTASH, the subscribing witness to the foregoing instrument, with whom I am personally acquainted, who, being by me duly sworn, did depose and say that she resides in Hampton, Virginia; that he knows LISA-ATHENA S. ABU HANTASH to be the individual described in and who executed the foregoing instrument; that said subscribing witness was present and saw said LISA-ATHENA S. ABU HANTASH execute the same; and that said witness at the same time subscribed her name as a witness thereto.

NOTARY PUBLIC

27

SHELBY N. ESTRADA
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES JULY 31, 2010