# VNY MODEL MANAGEMENT, LLC.

## MODEL MANAGEMENT AGREEMENT

AGREEMENT made as of the _19_ day of _June_____, 200 _6_ , by and between  VNY MODEL MANAGEMENT, LLC., 928 Broadway, Suite 801, New York, NY 10010 ("Manager"), and _____, _Jordan Richardson Inc_ _____ ("Model").

**WITNESSETH:**

IN CONSIDERATION of the sum of One Dollar ($1.00), each to the other paid in hand and the mutual covenants and promises herein contained, the parties hereto agree as follows:

1.   Model hereby engages the services of Manager as Model's sole and exclusive manager, representative and advisor throughout the world with respect to Model's professional career, talents, services and business affairs in the fashion, modeling and entertainment industries ("Career").   Manager hereby accepts such engagement, and agrees to counsel, confer and advise Model in the guidance of Model's career and activities; to use reasonable efforts to arrange for, exploit and commercialize Model's name, talent and abilities in connection therewith; supervise, negotiate and arrange the terms of any and all offers of employment or contracts for services of any nature whatsoever.   Manager agrees to render advice and assistance with respect to the development and improvement of Model's Career and all business interest related thereto.

2.    (A) Manager is not and shall not act as an agent for Model..   Model shall promptly refer to Manager all offers, communications or requests for Model's appearances or services.

     (B) Manager shall not be required to render services exclusively to Model, and shall, at all times, be free to perform the same or similar services for others, as well as engage in any and all other business activities.

3. The term of this Agreement (the "Term") shall consist of an initial period plus any and all option periods.   The initial period of this Agreement shall be two (2) years commencing on the date first above written and ending on _June_____, 200 _8___ (the "Initial Period").  The Term shall be automatically extended for additional periods of two (2) years each (collectively, "Option Periods"), unless Manager notifies Model, in writing, that it wishes to terminate this Agreement at any time before the expiration of the Term.  In the event Manager gives Model notice of termination, this Agreement shall terminate thirty (30) days from the date of such notice, unless the notice states otherwise.

Manager's obligation to continue to pay Model its fees hereunder, if any, shall survive termination of this Agreement.

4.      (A) As compensation for Manager's services hereunder, Model shall pay Manager sums equal to twenty percent (20%) of all "gross receipts" ("Fee") as hereinafter defined, off the top, from all sources paid or accrued to, or earned or received by Model or on Model's behalf or for Model's benefit, directly or indirectly, during the Term of this Agreement, and thereafter: (i) for any employment, engagement, commitment or contract in existence on the date hereof or negotiated for or entered into during the Term, and any renewal, extension, modification, amendment thereof or addition thereto, including a new agreement for an additional term with the same or related parties; (ii) any employment, engagement, commitment or contract substituted for or replacing, directly or indirectly, employments, engagements, commitments or contracts currently in existence or negotiated for or entered into during the Term and any renewal, extension, modification, amendment thereof or addition thereto, including a new agreement for an additional term with the same or related parties; and, (iii) any and all judgments, awards, settlements, payments, damages and proceeds relating to any suits, claims, actions or proceedings arising out of the alleged breach of non-performance by others of any of the contracts, engagements, commitments or other agreements referred to herein. Expiration or termination of this Agreement shall not affect Manager's rights to compensation as herein provided.

(B) Manager's full participation in Model's gross receipts from contracts / agreements entered into or substantially negotiated during the Term hereof shall continue for as long as gross receipts are payable to Model per the terms of said contracts / agreements, and any renewals, extensions, re-negotiations, modifications, or amendments thereof.

(C) The term "gross receipts" as used herein shall be deemed to include all forms of income payments, consideration and compensation including but not limited to advances, earnings, fees, royalties, bonuses and income in kind, regardless of by whom procured, secured or arranged, however, within the scope of Model's Career and professional activities hereunder. The term Model's "professional activities" shall include without limitation, any use of Model's talents and activities throughout the fashion, modeling and entertainment industries.

(D) Model understands that Manager is entitled to receive from some or all of the clients who may utilize Model's services a service charge, agency fee or other compensation ("Client Fee") over and above the Fee Manager receives from Model, and Model acknowledges that ~~that~~ such compensation is an additional inducement for Manager to act on Model's behalf and an important element in the compensation Manager receives from representing Model. In the event that Model accepts a booking for which his/her fee includes the Client Fee, Model agrees that Manager has the right to deduct such Client Fee from Model's gross compensation paid by the client in addition to Manager's Fee. Manager's Fee and Client Fee extend to any booking or engagement performed by Model subsequent to the termination of this Agreement if such booking or





engagement was negotiated, solicited or accepted by Model prior to such termination or is a continuation or work which began prior to termination, including renewals, options and renegotiated contracts.

5. (A)  Gross receipts shall be sent to Manager.  Model shall cause all contracts and agreements with third parties concerning Model's professional activities to provide for Model's compensation under those contracts and agreements to be paid directly to Manager.  Upon Manager's receipt of gross receipts, Manager shall deduct from such gross receipts:  (i) any and all fees, costs, and expenses advanced or incurred by Manager on Model's behalf, including any and all expenses advanced or incurred by Manager on Model's behalf before and after execution of this Agreement; and, (ii) all compensation or consideration due Manager hereunder.  Manager shall remit the balance of gross receipts, if any, to Model no later than ten (10) calendar days after receipt of gross receipts by Manager.

(B)  In the event that gross receipts are sent to Model, Model shall promptly notify Manager of its receipt of same.  In this event, Model shall promptly, and in no event later than five (5) calendar days after receipt thereof send the entire gross receipts proceeds to Manager for allocation and distribution as per Par. 5(A), above.

6.  Model shall, notwithstanding anything elsewhere contained herein, reimburse Manager for any and all costs or expenses Manager may incur, or any moneys Manager may advance in connection with Model's Career and professional activities hereunder, including but not limited to photographs, clothing and accessories, any and all equipment, advertising, publicity or promotion costs, long-distance telephone calls, travel and transportation expenses, administration, auditing fees, and any and all other costs incurred by Manager, from any and all monies earned by Model hereunder, and, if no monies are earned by Model hereunder or monies earned are insufficient to cover Manager's expenses, Model shall nevertheless reimburse Manager within six (6) months of Manager's incurring any particular expense.  Manager may, but shall not be obligated to, commence legal proceedings to collect amounts due to Model from clients, but if Manager does, Model shall bear the expenses associated with such proceedings.

7.  Model grants to Manager during the Term the nonexclusive right to use and publish and to permit others to use and publish Model's professional name, likeness and biographical material concerning Model, for advertising and purposes of trade and otherwise without limitation in connection with the furtherance of Model's Career and professional activities.  Manager shall have the right to advertise the fact that Manager represents Model in connection with Model's activities hereunder.  Manager shall have the right, within Manager's sole discretion, to publish Model's name, likeness, image, biographical information and statistics on its website for as long as Model is represented by Manager.

8.  (A) Model warrants and represents that Model: (i) has the full right, power and authority to enter into this agreement and to grant to Manager the rights granted herein; (ii) is under no obligation or disability or prohibition which will or might prevent Model



3



from keeping or performing Model's covenants, promises, representations and warranties contained herein; (iii) will not, during the Term, enter into any agreement or commitment which shall or might in any manner interfere with or prevent Model's carrying out the terms and conditions of this Agreement; and, (iv) will not, during the Term, engage any other person, firm or corporation to act as Model's personal manager or in any similar capacity.

(B) Model shall indemnify and hold Manager harmless from any loss, liability or damage (including reasonable attorney's fees) arising out of or connected with any claim by a third party which is inconsistent with any of the warranties, representations, covenants or promises made by Model hereunder. Model will reimburse Manager on demand for any payment made by Manager at any time in respect of any liability or claim to which the foregoing indemnity relates.



9. Model hereby authorizes and appoints Manager to be Model's agent and attorney-in-fact for the purpose of (a) negotiating, renegotiating, contracting and executing for Model and in Model's name and on Model's behalf and any and all agreements, documents, and instruments providing for Model's services to clients pursuant hereto; (b) approving and permitting the use of Model's name, image, voice, caricatures and the like for the purposes of advertising and publicity; (c) collecting and receiving sums payable to Model, endorsing Model's name upon and depositing in Manager's account all checks payable to Model, and retaining therefrom all sums owing to Manager; and, (d) demanding, suing for and collecting, all claims, money, interest and other items that may be due Model or belong to Model.

10. Manager shall have the right to assign this Agreement and any of Manager's rights hereunder without limitation. Manager shall have the right to delegate the performance of Manager's obligations hereunder without limitation. Model shall not have the right to assign this Agreement or delegate any of Model's obligations hereunder.

11. Manager shall not be liable for any breach of contract or act or omission on the part of anyone with whom any engagement or contract is negotiated, arranged or secured.

12. No breach or failure to perform any terms of this Agreement by either Manager or Model which would otherwise be a material breach of this Agreement, shall be considered a material breach of this Agreement, unless the party alleged to be in breach does not cure the same within a further period of thirty (30) days after receipt of written notice from the alleging party.

13. Manager shall have the right, at Manager's election, to suspend the operation of this Agreement if for any reason whatsoever Model is unable or unwilling to render services in the entertainment industries. Such suspension shall commence upon written notice to Model and shall last for the duration of any such unavailability or unwillingness to render services. At Manager's election, a period of time equal to the duration of such suspension shall be added to Term. In addition, if Model fails to render services in the



4

to Manager at the address above specified or any other address of which Manager gives

entertainment industries as aforesaid, then Manager may, in addition to other remedies provided for herein, terminate this contract upon written notice to Model. Notwithstanding anything to the contrary contained herein, Model shall be responsible for reimbursing Manager for any and all costs and expenses incurred by Manager in connection with Model's Career and professional activities within ten (10) calendar days of the date of termination. In the event that Model fails to so reimburse Manager, Manager shall have the right to avail itself of any all relief, including damages, injunction and equity, available to it under the law.

14. Any notice hereunder shall be sent to Model at the address above specified or any other address of which Model gives Manager notice. Any notices hereunder shall be sent to Manager at the address above specified or any other address of which Manager gives Model notice, with a copy to Natalia Nastaskin, Esq., 250 West 57th Street, Suite 917, New York, New York 10107. All notices shall be delivered personally, by mail, e-mail, facsimile or telegraph. The date of personal delivery, mailing receipt date, e-mail date, facsimile date or delivery to a telegraph office shall be the effective date of the notice.

15. This Agreement does not constitute or acknowledge any partnership or joint venture between the parties. Model understands and agrees that he / she is an independent contractor and not an employee of Manager, and, as such, shall be responsible for paying his/her own taxes from any and all monies earned hereunder.

16. This Agreement represents the entire agreement between the parties with respect to the subject matter hereof, and no modification, amendment, waiver, termination or discharge of this agreement or any provision thereof, shall be binding unless in writing signed by Model and Manager. No waiver of any provision or default under this Agreement shall affect Manager's rights thereafter to enforce such provisions or to exercise any right or remedy in the event of any other default, whether or not similar. This Agreement shall be construed in accordance with the laws of the State of New York, applicable to contracts entered into and wholly performed therein. If any provision of this Agreement violates or conflicts with any law, governmental rule or regulation or judicial decree, including any requirements for judicial approval, to the extent required, of all or any part of this Agreement, such provision or provisions shall be deemed amended to the minimum extent necessary to effect compliance with such law, rule, regulation or decree and as so amended shall remain in full force and effect.

17. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their heirs, administrators, executors, successors and assigns.

18. MODEL REPRESENTS AND WARRANTS THAT MODEL HAS BEEN ADVISED OF MODEL'S RIGHT TO SEEK LEGAL COUNSEL OF MODEL'S OWN CHOOSING IN CONNECTION WITH THE NEGOTIATION AND EXECUTION OF THIS CONTRACT.

19. IF MODEL IS EIGHTEEN (18) YEARS OF AGE OR OVER, MODEL MAY SIGN THIS AGREEMENT ON HIS/HER OWN BEHALF, AND BY SO DOING MODEL

5



EXPRESSLY REPRESENTS AND WARRANTS THAT MODEL HAS REACHED 18 YEARS OF AGE.  IF MODEL HAS NOT YET REACHED 18 YEARS OF AGE, HIS/HER PARENT(S) OR LEGAL GUARDIAN(S) MUST READ THIS AGREEMENT AND SIGN WHERE INDICATED BELOW.  IN ADDITION, MODEL AND HIS/HER PARENT(S) OR LEGAL GUARDIAN(S) ACKNOWLEDGE THAT IT IS MODEL'S AND THEIR RESPONSIBIILITY TO OBTAIN ALL NECESSARY GOVERNMENTAL CONSENTS, PERMITS AND APPROVALS REQUIRED BY STATE AND FEDERAL LAWS AND REGULATIONS FOR THE PERFORMANCE OF SERVICES HEREUDNER BY MINORS, INCLUDING WITHOUT LIMITATION WORK PERMITS VISAS, AND COURT APPROVALS WHERE NECESSARY.  AT MODEL'S REQUEST MANAGER WILL GUIDE AND COUNSEL MODEL WITH RESPECT TO OBTAINING SUCH CONSENTS, PERMITS, VISAS AND APPROVALS, AND MODEL AGREES TO SIGN ALL DOCUMENTS REQUIRED IN CONNECTION THEREWITH.  MODEL ACKNOWLEDGES THAT UPON HIS/HER REACHING 18 YEARS OF AGE THIS AGREEMENT WILL CONTINUE IN FULL FORCE AND EFFECT THROUGHOUT ITS TERM AND ANY RENEWALS THEREOF, AND MODEL'S CONTINUED ACCEPTANCE OF ASSIGNMENTS FROM MANAGER SHALL CONSTITUTE RATIFICATION OF ALL OF THE TERMS AND CONDITIONS HEREOF.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first above written.

**MANAGER:**
**VNY  MODEL MANAGEMENT, LLC.**


BY:_____
          Lana Winters
TITLE:     President


**AGREED AND ACCEPTED:**
**MODEL:**


_____

Jordan-Annettee J Richardson
Print Name


_____

Model's Soc. Sec. #: 230558610

*(handwritten annotations:)*
* homework 3 hr per day minimum
* home time with prior notification

* Jordan Richardson has the right to cancel the contract with A written notice 30 days prior to the expiration of the contract

**AGREED AND ACCEPTED:**
**MODEL'S PARENT /**
**LEGAL GUARDIAN**

_____

LISA-Athena J Abu Hantash
Print Name


_____

Capacity in which signed

# Office DEPOT.

## *Taking Care of Business*

## Fax Transmission
### PLEASE PRINT

**TO:** _Lana_    **FROM:** _LzA_

**FAX NUMBER:** _212 206 3655_    **SENDER'S PHONE #:** _____

**DATE:** _2:17 July 2006 RDS_    **# OF PAGES:** _____
*(Including Cover)*

**CUSTOMER NOTES:** _Jordan's Contract going back to LNMJt RDS_

_____

_____

_____

_____

If you have any difficulties with this transmission, please contact the sender at the phone number listed above.

### OFFICE DEPOT'S TERMS OF USE

SENDER AGREES NOT TO USE THIS FAX TO: (I) TRANSMIT MATERIAL WHOSE TRANSMISSION IS UNLAWFUL, HARASSING, LIBELOUS, ABUSIVE, THREATENING, HARMFUL, VULGAR, OBSCENE, PORNOGRAPHIC OR OTHERWISE OBJECTIONABLE; (II) CREATE A FALSE IDENTITY, OR OTHERWISE ATTEMPT TO MISLEAD OTHERS AS TO THE IDENTITY OF THE SENDER OR THE ORIGIN OF THIS FAX; (III) POST OR TRANSMIT ANY MATERIAL THAT MAY INFRINGE THE COPYRIGHT, TRADE SECRET, OR OTHER RIGHTS OF ANY THIRD PARTY; (IV) VIOLATE ANY FEDERAL, STATE OR LOCAL LAW IN THE LOCATION, OR (V) CONDUCT ACTIVITIES RELATED TO GAMBLING, SWEEPSTAKES, RAFFLES, LOTTERIES, CONTESTS, PONZI SCHEMES OR THE LIKE.

PLEASE NOTE THAT OFFICE DEPOT DOES NOT REVIEW THE CONTENTS OF ANY FAX SENT USING ITS SERVICES. FURTHER, BY SIGNING BELOW THE SENDER OF THIS FAX HEREBY AGREES TO INDEMNIFY OFFICE DEPOT TO THE FULLEST EXTENT OF THE LAW AND FOR ANY AND ALL CLAIMS, SUITS, OR DAMAGES ARISING OUT OR IN CONNECTION WITH THE REQUEST TO SEND, OR SENDING THIS FAX.

X _____
(CUSTOMER'S SIGNATURE)

## VISIT OFFICE DEPOT FOR YOUR:

- Color Copies- High Volume Copies
- Digital color, and Black & White copies
- Business Cards, Letterhead and Envelopes
- Custom Pre-Inked Stamps
- Customs Signs and Banners
- UPS Shipping Service
- Passport Photos
- Ad Specialties

### Store Information

**Office Depot #384**
*Steve Prentiss, Store Manager*
*Pat Brown, DPS Site Manager*
1082 W Mercury Blvd
Hampton, Virginia 23666
757-838-7610
**Fax: 757-838-8025**

## Thank you for using Office Depot's Customer FAX Service

```
          ┌─────────────────────────────────────┐
          │  TRANSMISSION VERIFICATION REPORT    │
          └─────────────────────────────────────┘

                              TIME  : 07/17/2006 15:31
                              NAME  : OFFICE DEPOT
                              FAX   : 7578388025
                              TEL   : 7578387160
                              SER.# : BROF5J293004
```

| | |
|---|---|
| DATE,TIME | 07/17  15:31 |
| FAX NO./NAME | 12122063655 |
| DURATION | 00:00:46 |
| PAGE(S) | 02 |
| RESULT | OK |
| MODE | STANDARD |
| | ECM |

# Office DEPOT.
## *Taking Care of Business*

## Fax Transmission
### PLEASE PRINT

TO: _Lana_

FROM: _LZA_

FAX NUMBER: _212 206 3655_

SENDER'S PHONE #: _____

DATE: _2'_

# OF PAGES: _____
*(Including Cover)*

CUSTOMER NOTES: _____

_____

_____

_____

_____

If you have any difficulties with this transmission, please contact the sender at the phone number listed above.

## OFFICE DEPOT'S TERMS OF USE

SENDER AGREES NOT TO USE THIS FAX TO: (I) TRANSMIT MATERIAL WHOSE TRANSMISSION IS UNLAWFUL, HARASSING, LIBELOUS, ABUSIVE, THREATENING, HARMFUL, VULGAR, OBSCENE, PORNOGRAPHIC OR OTHERWISE OBJECTIONABLE; (II) CREATE A FALSE IDENTITY, OR OTHERWISE ATTEMPT TO MISLEAD OTHERS AS TO THE IDENTITY OF THE SENDER OR THE ORIGIN OF THIS FAX; (III) POST OR TRANSMIT ANY MATERIAL THAT MAY INFRINGE THE COPYRIGHT, TRADE SECRET, OR OTHER RIGHTS OF ANY THIRD PARTY; (IV) VIOLATE ANY FEDERAL, STATE OR LOCAL LAW IN THE LOCATION, OR (V) CONDUCT ACTIVITIES RELATED TO GAMBLING, SWEEPSTAKES, RAFFLES, LOTTERIES, CONTESTS, PONZI SCHEMES OR THE LIKE.